THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MATTHEW STUPKA, Defendant-Appellant.

Second District No. 2—90—0833

Opinion filed March 25, 1992.—Rehearing denied April 28, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, Theodore A. Gottfried, of State Appellate Defender's Office, of Springfield, and Edward G. Moorman, of Alton, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

After a bench trial on June 4, 1990, defendant, Matthew Stupka, was convicted of unlawful delivery of a controlled substance (cocaine) (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)), a Class X felony. On July 3, 1990, the trial court sentenced him to six years' imprisonment and imposed a fine of $2,900. Defendant appeals, contending that he was not proved guilty of the offense beyond a reasonable doubt because, he argues, the evidence at trial did not show that there was a completed delivery of the cocaine. We affirm.

The evidence adduced at trial shows that, on the afternoon of August 2, 1989, undercover agent Mark Maton of the Illinois State Police made arrangements with defendant at the Du Page Inn to purchase $1,200 worth of cocaine near a McDonald's restaurant in Woodridge, Illinois. Maton and defendant drove to the McDonald's where the transaction was to take place. Maton testified that, on the way, defendant produced a blue snow seal containing cocaine that was apparently used for sampling. Defendant stated that the cocaine they were about to buy was of high quality and referred to it as "rock." They discussed the possibility of future transactions. They arrived at McDonald's at about 5:45 p.m. and parked north of a silver Lincoln Continental located in the east parking lot.

Maton and defendant went inside the restaurant. Defendant asked for the $1,200; he wanted to go into the parking lot and complete the transaction. Maton said he wanted to see the cocaine before giving defendant the money. After purchasing some food, Maton and defendant walked to the Lincoln, and defendant opened the passenger door. In the car was a man later identified as Daniel Larmon. Larmon asked for the money, but Maton wanted to see the cocaine first. Larmon had a paper bag in his hand and said that the cocaine was inside the bag. Maton gave the money to defendant, who gave it to Larmon. Larmon handed a McDonald's bag to defendant who, in turn, gave it to Maton. When Larmon was handing the bag to defendant, Larmon

said to throw the McDonald's bag in the garbage can and they would see the cocaine.

Maton stepped back, and Larmon put his vehicle in reverse, whereupon Maton activated the arrest signal. After the suspects were arrested, the cocaine was retrieved a moment later by an agent of the Du Page Metropolitan Enforcement Group (DUMEG), Joe H. DeAnda, who testified he had been told of its location by Maton. The cocaine was located in a styrofoam container in the first bag he found in the garbage can about eight feet in front of Larmon's vehicle.

On cross-examination, Maton testified that when he took the bag from defendant, Maton looked inside and did not find any cocaine and he acknowledged that no controlled substance was actually delivered to him at the time he activated the prearranged arrest signal. He maintained, however, that it had been constructively delivered.

On redirect examination, Maton stated that the reason he pushed the "panic" button was because Larmon had put the car in reverse and was attempting to leave the parking lot. On re-cross-examination, he said that defendant was arrested prior to locating the controlled substance.

Larry Wiess, another DUMEG agent who had followed defendant and Maton to the McDonald's location, stated that when he pulled into the parking lot, he saw Larmon, the driver of the Lincoln, standing in front of his vehicle and in front of the garbage can. Wiess later observed Maton and defendant talk to Larmon from the passenger side of the vehicle as he waited for the arrest signal. After the arrest, Wiess observed DeAnda retrieve, from the same garbage can next to which Larmon had been standing, a bag containing a styrofoam container in which there was a baggie containing a white powder later identified as cocaine. He also identified the snow seal that was taken from defendant after the arrest.

The chain of custody of the physical evidence was established, and Sheila Duggan, a forensic scientist, testified that she identified the larger amount of the powder as containing 27.72 grams of cocaine.

Defendant testified that he went to McDonald's with Maton. Defendant recognized Larmon in the Lincoln. When they exited the restaurant and approached the Lincoln, Maton gave him the money, and defendant threw it on the front seat of the Lincoln. He grabbed a McDonald's bag from the seat and walked to the passenger side of Maton's car and got in. He denied that Maton had any conversation with Larmon. Defendant testified that when he got into Maton's car and Maton got in on the other side, Maton asked, "[I]s it in there?" Defendant said yes.

Defendant stated that Maton had told him there was $1,200 for the purchase of the cocaine. Defendant was not sure whether Larmon told him that the cocaine was in the McDonald's bag. Defendant acknowledged that he had earlier discussed the transaction to sell cocaine to Maton for the price of $1,200, and, on instructions from Larmon, he directed Maton to McDonald's, but he denied that he knew with certainty that Larmon would be there with the cocaine. Defendant assumed that the cocaine was in the bag. He acknowledged that he had obtained small amounts of cocaine from Larmon before.

The State argued that it had presented evidence satisfying the elements of the offense, including knowledge and delivery of the controlled substance and that defendant's participation made him liable under an accountability theory. The critical argument presented to the court was whether there was a delivery. The State cited the statutory definition of "delivery": deliver or delivery means "the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship" (Ill. Rev. Stat. 1989, ch. 56½, par. 1102(h)). The State maintained that, at the very least, there was an attempted transfer of cocaine; the State also argued that there was a constructive delivery.

The trial court found that the State had proved every element of the offense. The court added, "At best, it is an attempt to transfer." Additionally, the court noted that Maton had testified that Larmon told him "exactly what to do, where the cocaine was" and reiterated that the State had proved every element of the offense beyond a reasonable doubt.

Defendant first argues that there was no constructive transfer of possession of the drug because, even if the officer was to be believed, he was only told where to find the cocaine. Defendant posits that, at the time of the incident, the cocaine was in a garbage can and had not been placed in the exclusive and immediate control of Maton so as to constitute constructive transfer. He asserts that there was an incompleted offense of unlawful delivery. Relying on the trial court's comments, defendant maintains that, at best, there was an attempted transfer and the facts would support only a conviction of the offense of attempted unlawful delivery of a controlled substance under the attempt statute (Ill. Rev. Stat. 1989, ch. 38, par. 8—4), an inchoate offense for which he was not specifically charged and which, in this case, would be a Class 1 felony carrying a lesser sentence. Defendant therefore prays for a reversal of his conviction, or, alternatively, for a new trial or a resentencing.

 We believe that the evidence sustains the unlawful delivery conviction on either a theory of an attempted transfer or a constructive transfer of possession. On appeal, the reviewing court will examine all of the evidence in the light most favorable to the prosecution, and the relevant question is whether, as to the crime charged, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *People v. Furby* (1990), 138 Ill. 2d 434, 455.

We also observe that, in reviewing the decision of a trial court, the controlling question is the correctness of the trial court's conclusion, not the validity of its rationale. It is the judgment and not what may have been said by the court that is being appealed, and the court's judgment may be sustained on any ground supported by the record. *People v. Ortiz* (1988), 170 Ill. App. 3d 1083, 1089; *People v. Wiley* (1988), 169 Ill. App. 3d 140, 145; see also *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 374 (where evidence was sufficient to convict defendant of crime charged, supreme court would not speculate that verdict was for a crime not charged in indictment); *People v. Dare* (1986), 140 Ill. App. 3d 413, 419 (reasons for trial court's judgment of conviction not binding on reviewing court, and conviction was sustained where evidence was sufficient notwithstanding trial court's reasoning).

The evidence was sufficient to show that defendant effectuated a constructive transfer of possession of the drug. Constructive possession of a controlled substance exists when there is no actual personal present control over the substance, but there is an intent and capacity to maintain control and dominion over it. (*People v. Fox* (1962), 24 Ill. 2d 581, 585; *People v. Morrison* (1988), 178 Ill. App. 3d 76, 90.) Constructive possession may be proved, for example, by showing defendant controlled the premises where the drugs were found (178 Ill. App. 3d at 90), and mere access by others to the premises is insufficient to defeat a charge involving constructive possession (*People v. Maiden* (1991), 210 Ill. App. 3d 390). When controlled substances are found on premises under the control of defendant, it gives rise to an inference of knowledge and possession by defendant which may be sufficient to sustain a conviction of unlawful possession, absent other facts and circumstances which might raise a reasonable doubt of guilt. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09; see *People v. David* (1986), 141 Ill. App. 3d 243, 257 (evidence established knowledge and constructive possession of phenobarbital in garbage cans when defendant led police to garbage cans in his garage, an area under defendant's control,

even though others had access to garage).) Possession may be shared or joint yet still exclusive. *People v. Embry* (1960), 20 Ill. 2d 331.

Here, there was a constructive transfer of possession. Larmon, the principal, was shown to have the intent and capacity to exert control and dominion over the drug, that is, he was in a position to exercise such control and dominion. From the evidence, it can be inferred that defendant's source had positioned himself near the garbage can which was apparently within his field of vision since it was located in front of his car; Larmon had placed himself in a position to exert control over the drug that had been placed there. Based on the words and conduct of the source in accepting the money and in verbally manifesting an intent to transfer and give up possession to the agent by telling him to look in the garbage can, there was an effective constructive transfer of possession of the controlled substance. The drug had been set apart and placed in a location within the source's control and was placed within the control of Agent Maton upon the giving of directions. The verbal directions to the heretofore concealed drug were the "key" to the transfer. There was a constructive transfer of possession or delivery within the meaning of the statute even though Maton never took physical possession of the drug prior to the arrest. (See *People v. Valen* (1989), 183 Ill. App. 3d 571, 579.) Since defendant clearly participated in setting up the drug transaction and played a role in the transfer, he is criminally liable under an accountability theory (see *Valen*, 183 Ill. App. 3d at 577) and may be tried on the substantive offense (*People v. Krouse* (1975), 30 Ill. App. 3d 446, 448).

There is an additional reason to sustain the conviction, as we shall explain. Although we believe that the evidence of constructive transfer or delivery is sufficient to sustain the conviction notwithstanding the trial court's comment, we also address defendant's contention that, at best, he was guilty of an attempted delivery and that he should not be held convicted of the completed offense, particularly where the sentence for an inchoate offense is less than for the completed offense and he was not charged with attempted delivery. An attempt crime is committed when, with intent to commit a specific offense, the person does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1989, ch. 38, par. 8—4(a).) Defendant urges that there is such a crime as attempted unlawful delivery of a controlled substance under the general attempt statute and states that this court has held there is such a crime in *People v. Lev* (1988), 166 Ill. App. 3d 173. Because this issue may arise in the future or may be the subject of further appeal, we will address it. See *People v. Urban* (1990), 196 Ill. App. 3d 310, 313.

In *Lev*, the defendant contended that an attempt to possess a controlled substance with an intent to deliver would wrongly subject those who attempt to possess to the same penalties as those who actually complete the transaction and are in actual possession of the contraband. The defendant was actually charged with the attempted possession of a controlled substance with intent to deliver. The defendant further argued that his conviction was the equivalent of an attempted attempt to deliver, an illusory offense. This court held that the attempt statute (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) applied to the *possession* of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401) but also stated that section 8—4 would apply to an unlawful delivery as well. This court's statement of the applicability of section 8—4 to an unlawful delivery is *dictum* insofar as it suggests that it creates a separate offense of attempted unlawful delivery under section 8—4 of the Criminal Code of 1961 (Code).

We limit the holding of *Lev*. In *Lev*, we did not focus on the effect of the statutory definition of delivery, with respect to the substantive offense, as including an "attempted transfer of possession" (Ill. Rev. Stat. 1989, ch. 56½, par. 1102(h)). We recognize that a person may not be convicted of both the inchoate and the principal offense (Ill. Rev. Stat. 1989, ch. 38, par. 8—5) and that, constitutionally, sentencing must be proportionate to the nature of the offense (*People v. Agriesti* (1989), 191 Ill. App. 3d 419, 424). Because the method of charging necessarily affects the sentence, we will consider the applicability of the principle of preemption to the facts of the instant case.

The State points out that, in *People v. Caryl* (1977), 54 Ill. App. 3d 537, this court recognized the principle of preemption in determining whether a specific statutory provision enacted by the legislature should be deemed to prevail over or preempt a more general statutory provision. In *Caryl*, the defendants had been indicted under the general conspiracy statute (Ill. Rev. Stat. 1975, ch. 38, par. 8—2) for conspiracy to deliver more than 10 grams and not more than 30 grams of a substance containing cannabis. In the trial court, the defendants successfully moved to dismiss the charge on the ground that it did not state an offense because the specific conspiracy provision of the Cannabis Control Act (Control Act) (Ill. Rev. Stat. 1975, ch. 56½, par. 709) preempted prosecution under the general criminal conspiracy statute. Section 9 of the Control Act contained a specific conspiracy provision which, by its own terms, applied to conspiracies involving more than 30 grams but not more than 500 grams of cannabis.

The *Caryl* court held that, where a defendant is charged with conspiracy to deliver more than 30 grams but not more than 500 grams of cannabis, the Control Act excludes prosecution under the general conspiracy statute; however, the general conspiracy statute was held to apply to all other conspiracy prosecutions not within the limits of the specific provision. In *Caryl*, however, section 9 of the Control Act, the specific provision, did not apply to the defendants who had been charged under the more general provision with conspiracy to deliver quantities of cannabis outside the ambit of section 9; thus, the judgment was reversed and the cause remanded. The principle followed in *Caryl* is that the more specific statute controls over the more general, that is, the specific provision of the Control Act was held to preempt the more general conspiracy provision found in section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—2).

This principle was recently applied in an opinion authored by Presiding Justice Heiple in *People v. Urban* (1990), 196 Ill. App. 3d 310, 313, where the court affirmed the trial court's dismissal of a charge filed under the Criminal Code on the ground that the more specific conspiracy provision of the Cannabis Control Act preempted the Criminal Code provision. See also *People v. Taylor* (1974), 18 Ill. App. 3d 480; *People v. Hale* (1965), 55 Ill. App. 2d 260.

■ We believe the principle of preemption has sound application here where the legislature has chosen to include an "attempted transfer of possession" of a controlled substance in the definition of the substantive offense of unlawful "delivery" of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, pars. 1102(h), 1401). The express inclusion of an attempt in the substantive offense appears to demonstrate a legislative intent to equate an attempted delivery with the seriousness of a completed delivery of a controlled substance. See, *e.g., State v. Vinson* (Fla. App. 1974), 298 So. 2d 505 (where delivery was defined as an actual, constructive or attempted transfer of a controlled substance, a physician who, in bad faith and not in the course of his profession, attempted unsuccessfully to transfer a controlled substance by issuing a prescription was guilty of the substantive offense under the more specific statute rather than of an attempted offense under the general attempt statute).

Following the principle applied in *Caryl* and *Urban*, we hold that the specific provisions regarding delivery, which include an attempted transfer as defined in the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, pars. 1102(h), 1401) preempt the general attempt provision of section 8—4 (Ill. Rev. Stat. 1989, ch. 38, par. 8—4). Thus,

defendant was properly charged with and convicted of the substantive offense carrying the greater penalty.

We have construed the statutes as written. If the legislature intended a different result than we have reached here, we are unable to rewrite the statute as this is within the province of the legislature alone. (See *Taylor*, 18 Ill. App. 3d at 482.) We observe, however, that the 1970 version of section 101(f) of the Uniform Controlled Substances Act (Unif. Controlled Substances Act §101(f), 9 (Pt. II) U.L.A. 11 (1988)), upon which the Illinois statutory definition of delivery is based, has been amended to delete the term "attempted" from section 101(4) of the 1990 version (9 (Pt. II) U.L.A. 2 (Supp. 1991)) which defines delivery.

■ Finally, defendant appears to challenge the credibility of Agent Maton's testimony by pointing to purported inconsistencies in Maton's version of events: that Maton stated Larmon first told him to look in the bag was inconsistent with Larmon's telling him to then look in the garbage can; and that only after the arrest did Maton, in fact, first look in the bag and activate the arrest signal, before an officer looked in the garbage can. Defendant also notes that he contradicted Maton by denying that Larmon had made any statement regarding the garbage can. Defendant argues that these inconsistencies raise a serious question whether he should have been convicted by the trial court of an attempted delivery as opposed to a completed delivery.

First, the credibility of the witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are for the trier of fact. (*Furby*, 138 Ill. 2d at 455.) The trial court could and did choose to believe Maton's version of events over defendant's. Moreover, our analysis has shown that the evidence supports a finding that defendant was guilty of the completed, substantive offense either on a theory of attempted transfer or of a constructive transfer of the drug. That there may be some overlap of the two theories does not invalidate the conviction. We do not find these theories mutually exclusive under the facts of this case. Defendant has not raised a reasonable doubt of his guilt.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.