THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM PATTEN, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1593

Opinion filed June 9, 1992.

Randolph N. Stone, Public Defender, of Chicago (Murray Coffey and Karen Tietz, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Mahoney, and Theresa Harney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, William Patten, convicted by a jury on two counts of child abduction (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(10) (section 10—5(b)(10))), appeals, questioning whether (1) a jury instruction created a mandatory presumption, denying him due process; (2) the exclusion of expert testimony denied him the right to prepare a defense; (3) the court erred in admitting evidence of another crime; (4) the child abduction statute provides disproportionate penalties and is violative of due process; and (5) defendant was denied effective assistance of counsel. For reasons which follow, we affirm.

The following facts were adduced at trial. B.M., a 10-year-old male, testified that on May 27, 1990, at 2:40 p.m., he was talking with E.L., a 10-year-old female, on the corner of 114th and Whipple Avenue, near B.M.'s home in Merrionette Park, Illinois. He observed a red Mustang move down Whipple Avenue, turn into the wrong lane and stop. The driver's side of the car was next to the curb. The car stopped near the children. The driver, who B.M. later identified in court as defendant, and who B.M. had seen driving on other occasions, exited the automobile and stood approximately five feet from them. The driver's door remained open as defendant extended his arms out and open in a motion toward the children. Defendant's hands almost touched B.M. Defendant said to both children, "[c]ome here I want to give you a kiss." The children ran to B.M.'s home and informed B.M.'s mother that "[t]he guy in the red car stopped us and said come here, I want to give you a kiss and he tried grabbing for us."

Minutes later, B.M., his mother and E.L. stopped a policeman and informed him of what happened. The officer showed B.M. pictures, from which he identified defendant. B.M. asserted that defendant did not offer the children candy or a ride or try to get E.L. into the car. On June 4, B.M. picked defendant out of a lineup.

B.M.'s mother testified that on May 27, 1990, B.M. ran into the house with E.L., excited, scared and nervous. He asserted that a man pulled up next to him, reached out for him, and asked for a kiss. Upon the mother's request, B.M. flagged down a Merrionette Park

police officer. She did not give defendant permission to take B.M. into his car.

E.L.'s testimony tracked that of B.M. and his mother. She identified defendant in court as the man involved in the incident. On May 31, under questioning by a detective, she described defendant and the car, and identified him from a six-picture display. On June 4, she picked defendant out of a lineup. She further asserted that defendant once chased her as she was on her way to cheerleading practice.

E.L.'s mother testified that she never gave defendant permission to put E.L. in his car on May 27. E.L. once told her she was followed on the way to cheerleading practice, but not by whom. E.L.'s mother called the police one month prior to the incident, when she saw defendant drive by while continuously looking at the children.

Merrionette Park police Sgt. Robert Olszowka stated that on May 27, he was flagged down by B.M., who was excited and frightened. His eyes were staring straight ahead, and his hands were moving. He was talking fast and breathing heavily. After speaking with him, the officer related the incident to his dispatcher. When Merrionette Park Detective Dan Waliczek arrived, they searched the immediate and adjoining areas for the vehicle, including part of Chicago.

Detective Waliczek testified that he was dispatched to the scene, where he spoke with Sgt. Olszowka. He unsuccessfully searched the area for defendant and the vehicle. On May 31, he went to E.L.'s house and showed her a photograph spread of six white individuals. She identified defendant as the one who tried to grab her. Subsequently, he went to B.M.'s home, where, from the same picture selection, B.M. identified defendant as the offender.

At about 11:00 a.m. on June 4, Detective Waliczek went to defendant's home in Chicago, 1½ miles from the incident. Defendant was arrested and transported to the Merrionette Park police station. Defendant's attorney, his parents, and B.M.'s and E.L.'s parents were notified. A lineup was conducted, where both B.M. and E.L., at separate times, identified defendant as the offender. Detective Waliczek made an in-court identification of defendant as the one chosen at the lineup.

Detective Waliczek additionally asserted that defendant owned a 1988 red Mustang "hatchback," which was found outside his home upon arrest. B.M. and E.L. did not tell the detective that defendant directed them into the car or touched them. He concluded that defendant tried to drag them into the car, which was not asserted by the minors. Both children knew defendant from the "ball field."

K.H., an 11-year-old female, P.H., a nine-year-old male, and Chicago police detective James Butler testified for the limited purposes of identification, presence, and *modus operandi*.

K.H. and P.H. asserted that on September 26, 1990, at 7 p.m., they were playing in front of P.H.'s house on the far southwest side of Chicago, with the latter's 13-year-old cousin, who was baby-sitting, and P.H.'s younger sister. She was playing near the curb. When the baby sitter went inside to answer the telephone, defendant drove past the house, stopped at a stop sign and drove in reverse back to the house, into the curb where the sister was playing. Defendant waived to them and said "come here." K.H. only heard "come."

P.H. and his sister ran into the house. The baby sitter called the police. Subsequently, K.H. identified defendant in a photograph display and at a lineup. Both K.H. and P.H. identified defendant's car at the police station. Detective Butler identified defendant in court as the individual involved in the Chicago incident.

Neither of the minors knew B.M. or E.L. The same was true for B.M.'s and E.L.'s knowledge of these two minors.

Defendant's motion for a finding at the close of the State's case was denied.

Defendant's answer to the State's request for pretrial discovery listed alibi as his defense, with his father, mother and brother as witnesses; however, when defendant called Raymond Patten, Rita Patten and Lawrence Patten, his father, mother and brother, respectively, they testified only that defendant worked for 20 years at North American Cab Company, which he left when it closed, and had served in the armed forces. Defendant owned a red Mustang.

Defendant rested and was found guilty as previously mentioned. His motions for judgment notwithstanding the verdict, for a new trial and for arrest of judgment were denied. During his sentencing hearing, in which extensive testimony was presented, defendant denied having been involved in the incidents involving any of the children who testified. He was sentenced to three years in custody of the Department of Corrections. He appeals.

I

Defendant asserts that the child abduction instruction given to the jury created a mandatory presumption, which denied defendant due process.

The applicable statute provides that a person commits child abduction when he or she "[i]ntentionally lures or attempts to lure a child under the age of 16 into a motor vehicle *** without the consent of

the parent or lawful custodian of the child for other than a lawful purpose." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(10) (section 10—5(b)(10)).) Over defendant's objection the jury was given a nonpattern instruction which stated that: "If you find that at the time the defendant lured or attempted to lure a child under the age of sixteen years old into a motor vehicle and he did so without the consent of a parent or lawful custodian of the child, you may infer it was for other than a lawful purpose." The instruction purportedly was authorized by section 10—5(b)(10) language to the effect that the above-described actions constitute *prima facie* evidence of "other than a lawful purpose," and by *People v. Embry* (1988), 177 Ill. App. 3d 96, 531 N.E.2d 1130 (*Embry*), *People v. Hester* (1989), 131 Ill. 2d 91, 544 N.E.2d 797 (*Hester*), and *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151 (*Housby*).

Defendant urges that this instruction violated due process by creating a mandatory presumption, which caused the jurors to assume that there was no choice but to make the instructed presumption, relieving them of their duty to find the ultimate facts of defendant's guilt beyond a reasonable doubt, based on evidence adduced by the State (*People v. Joyce* (1991), 210 Ill. App. 3d 1059, 1069, 569 N.E.2d 1189). (See *People v. Hester* (1989), 131 Ill. 2d 91, 544 N.E.2d 797.) Defendant maintains that a further instruction, informing the jurors that the presumption was rebuttable by the evidence, should have been given.

■■ A permissive inference allows—but does not require—the trier of fact to infer from the evidence one or more factual deductions or conclusions. (See *Embry*, 177 Ill. App. 3d at 100; *People v. Cisel* (1982), 110 Ill. App. 3d 1070, 1072, 443 N.E.2d 734.) The words "you may infer," contained in the subject instruction, create a permissive inference (*Housby*, 84 Ill. 2d at 433), which the jury was free to accept or reject, placing no burden on defendant (*Hester*, 131 Ill. 2d at 99-100). The supreme court has held that the words "you may infer" alone adequately inform a jury that the inference is permissive and it is free to reject it in judging defendant's guilt. (*Housby*, 84 Ill. 2d at 433; see *People v. Marcotte* (1991), 217 Ill. App. 3d 797, 577 N.E.2d 799.) Furthermore, as in *Housby*, in addition to the "you may infer" language, the jury also was instructed that defendant is presumed innocent at every stage, which is not overcome unless from all the evidence it is convinced beyond a reasonable doubt that defendant is guilty; and that the burden remains with the State throughout the case. This combination of instructions further informed the jury of its option to disregard the presumption. *Housby*, 84 Ill. 2d at 434.

The jury was not mandated to accept the presumption, nor did the instruction have the effect of shifting the burden of persuasion. There was no error.

## II

Defendant urges that the court's exclusion of testimony by a defense expert inhibited his ability to present a defense. The expert testimony, he insists, would have been relevant to the rebuttable presumption of defendant's mental state, namely, whether he was acting for a lawful purpose. Without this testimony, defendant claims, he was forced to rely on attestations from family members as his defense. The State successfully moved to exclude this testimony.

Defense counsel informed the court, during the State's motion *in limine*, that the expert's testimony would encompass an 18-month examination of defendant. The expert observed defendant's hospital records, and interviewed defendant as well as his mother, father and brother. The expert would assert that defendant was not a child molester, pedophiliac or homosexual. He would testify as to what caused defendant to act "not quite normal," but do nothing criminal. One report regarding defendant indicates that he had a schizotypal personality disorder which is exemplified by oddities in behavior. (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 340-41 (3d ed. rev. 1987).) This evidence, defendant asserts, could have explained to the jury that defendant did not act with unlawful purpose, but had a personality disorder.

The circuit court found no factual basis for the defense expert to testify. Of concern to the court was that the expert's statements regarding defendant's lack of homosexual and pedophiliac tendencies would confuse the jury by allowing it to believe that if the State did not prove homosexuality or pedophilia, defendant could not be found guilty.

■ The denial or granting of a motion *in limine* will be reversed only if the circuit court manifestly exceeded its discretion. (*People v. Salazar* (1991), 211 Ill. App. 3d 899, 910, 570 N.E.2d 802.) The excluded testimony was irrelevant, since it would not have aided in the establishment of the purpose of defendant's actions. There was no evidence that the defense expert would have testified to any lawful purpose defendant had in mind when he attempted to lure the children. The question at issue was whether defendant committed child abduction, which could have been decided by the jury without expert assistance. (*People v. Perry* (1986), 147 Ill. App. 3d 272, 275, 498 N.E.2d 1167.) Also, defendant, in his pretrial discovery answer, denied he was

present at the incident. Therefore, the expert's testimony would have been irrelevant to the alibi defense. Further, the testimony would have given the jury the misimpression that the purpose of abduction must be sexual or that the State must prove what the purpose was. No sexual purpose is required by the statute. Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(10).

From the foregoing it is clear that the circuit court did not abuse its discretion in refusing the proffered expert testimony for jury consideration.

## III

Defendant next avers that evidence of defendant's other crime was impermissible because no *modus operandi* was shown; no identification problem existed; and the court failed to exercise any discretion regarding admissibility.

The prosecution presented evidence of another crime, that involving K.H., P.H. and Detective Butler. The asserted need for this evidence was to establish *modus operandi*, identity and to challenge defendant's alibi. After counsel described the similarities between the present case and the other, the court allowed the testimony.

■■ Defendant argues that the similarities between the instant case and the other crime were insufficient to sustain its admission for *modus operandi*. Dissimilarities identified by the defense include the fact that the present case occurred outside of Chicago, but the other occurrence took place within the city; the incidents occurred four months apart; only in the instant case did defendant exit his vehicle; and in the present incident defendant asked for a kiss, but in the other crime he stated "come here." Apparent similarities, however, included the use of a small red car; the identification of the red car by all four minors involved; the objects of the offenses were children in pairs; the children were of similar age; the victims lived a few blocks apart in relatively the same neighborhood; no adults were present in either case; the offender gestured in close proximity to the car; both incidents were daytime occurrences; and defendant was identified by three of the four minors.

The decision to admit evidence of other crimes is within the sound discretion of the circuit court, and its determination will not be disturbed absent an abuse of discretion. (*People v. Willis* (1989), 184 Ill. App. 3d 1033, 1040, 540 N.E.2d 1080.) To show *modus operandi* there must be distinctive features that are not common to most offenses of that type; however, not all features need to be distinct. (*People v. Tate* (1981), 87 Ill. 2d 134, 142-43, 429 N.E.2d 470.) Geographic proximity

of the offenses, similarity in execution and the description of the accused are factors relevant to showing similarity. (*Willis*, 184 Ill. App. 3d at 1041; *People v. Anderson* (1982), 108 Ill. App. 3d 563, 570, 439 N.E.2d 65; *People v. Therriault* (1976), 42 Ill. App. 3d 876, 886, 356 N.E.2d 999.) The similarities here demonstrate that the circuit court appropriately exercised its discretion in allowing evidence of the other crime to be considered by the jury here.

Defendant asserts that proof of identity was already established to such a degree by the witnesses that evidence of the other crime was unnecessary to show identity and, therefore, was prejudicial. Defendant claims that the only purpose to be served by that evidence was to show his propensity to commit crime. The relevance of such evidence must be weighed against its prejudicial effect to defendant, a determination which will not be disturbed absent clear abuse of discretion. (*People v. Wright* (1986), 140 Ill. App. 3d 576, 579, 488 N.E.2d 1344.) Defendant asserts, however, that the court did not weigh the probative value against the prejudicial effect of the evidence, citing the court's language, and characterizing it as a demonstration that the court did not know it had discretion to exclude the evidence.

■ The language defendant identifies as showing that the court was incognizant of its discretion focuses upon its use of words such as, "I'll have to let it in," or "I have to let that in." In each instance, however, the court conditioned its premise upon the introduction of certain evidence, indicating a process of weighing and evaluating, a *sine qua non* of discretion being exercised. There was no error.

## IV

Defendant contends that the attempt language contained in the child abduction statute violates principles of due process and proportionate penalties under the Illinois Constitution. He argues that section 10—5(b)(10), proscribing both child abduction and attempted child abduction in the same provision, is unconstitutionally disproportionate, because section 10—5(d) prescribes the same penalty for either violation (Class 4 felonies); yet, the identical offense of attempt, if charged as violating the general attempt statute (Ill. Rev. Stat. 1989, ch. 38, par. 8—4(a)), would be a Class A misdemeanor (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(c)(5)).

■ The general attempt statute applies to all offenses, unless there is manifest a legislative intent to exclude it from the statute. (*People v. Wallace* (1974), 57 Ill. 2d 285, 291-92, 312 N.E.2d 263.) Here, such an intent exists. The legislature, in contemplating whether

the general attempt statute provided adequate coverage, found it necessary that section 10—5(b)(10) provide for the attempted luring of a child in addition to the already covered actual luring of the child. (See 84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 220.) The intent of the legislature to increase punishment in specific child abduction cases was within its prerogative, and its decision to exclude the general attempt statute in such cases eliminated any proportion problem.

Defendant next asserts that punishing unsuccessful abductions as severely as successful abductions is an unreasonable method of accomplishing the objective of protecting children; therefore, it is in violation of due process. More or different people are not affected, he argues; only the punishment is increased for attempt, which is inconsistent with the idea of punishing attempt acts less seriously than completed acts. Ill. Rev. Stat. 1989, ch. 38, par. 8—4(c).

■ The legislative history of section 10—5(b)(10) reveals the concern that attempted luring of a child is as serious a threat to the safety of a child as a successful abduction. (See *People v. Williams* (1990), 133 Ill. 2d 449, 457, 551 N.E.2d 631.) In *Williams*, the supreme court observed that "[o]nce a child is taken into a vehicle and whisked away by a person harboring a criminal motive, it becomes exceedingly difficult, if not impossible, for law enforcement personnel to intervene for the protection of the child." (133 Ill. 2d at 457.) Here, the increased penalty may have a deterrent effect on would-be violators by declaring that an attempt will be treated as harshly as a crime accomplished.

Accordingly, we find that section 10—5(b)(10) is not in violation of the proportionate penalties or due process clauses.

## V

Lastly, defendant avers that his attorney committed errors having the cumulative effect of denying him effective assistance of counsel.

The circuit court found the testimony regarding defendant's other crime admissible, in part, due to the assertion of an alibi defense. The court found such testimony permissible in proof of defendant's presence at the incident in question. After the State had presented its evidence, defense counsel announced that he would not present the alibi defense if the court would exclude evidence of the other crime. The court refused because defense counsel had already made defendant's presence an issue by filing the alibi defense, requiring the State to prove that element in its case in chief. The court also indicated that there were enough similarities between the two incidents to admit ev-

idence of the other crime for identification and *modus operandi* purposes. Defendant also asserts defense counsel provided ineffective assistance of counsel in abandoning the alibi defense, which he did not argue to the jury or present testimony to support. The jury, it is claimed, then was left with the impression defendant had a propensity to commit crimes.

To sustain a claim of ineffective assistance of counsel, defendant must prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to deprive defendant of a fair trial. Defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246.) The inquiry does not, however, generally extend to the exercise of judgment, discretion, trial tactics or strategy, even where appellate counsel or the reviewing court would have handled the situation differently. (*People v. Schmidt* (1988), 168 Ill. App. 3d 873, 882, 522 N.E.2d 1317.) The accused is entitled to competent, not perfect, representation; the fact that a tactic was unsuccessful does not demonstrate incompetence. *Schmidt*, 168 Ill. App. 3d at 882.

■ The record reveals that counsel acted competently. He supported his new theory, that defendant's actions did not constitute child abduction, by cross-examining the children; eliciting information from family members about defendant's past; arguing against the exclusion of the expert; attempting to strike evidence of other crimes; objecting to alleged prejudicial instructions; filing three post-trial motions; and submitting considerable evidence in mitigation at the sentencing hearing. Based upon this pursuance of the defense, counsel's overall conduct was competent and reasonable. *Albanese*, 104 Ill. 2d at 525.

From the foregoing analysis, no reversible error was committed and defendant's conviction and sentencing must be affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.