THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN LANCE, Defendant-Appellant.

First District (5th Division)   No. 1—91—2804

Opinion filed February 26, 1993.

Michael J. Pelletier, of State Appellate Defender's Office, and Alison J. Norwood, Panel Attorney/Narcotics Cases, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

After a jury trial, defendant Steven Lance (Lance) was convicted of unlawful delivery of more than 15 grams of cocaine, pursuant to sections 401(a)(2)(A) and 102(h) of the Illinois Controlled Substances Act (the Act) (Ill. Rev. Stat. 1989, ch. 56½, pars. 1401(a)(2)(A), 1102(h)) and was sentenced to six years' imprisonment in the Department of Corrections. Lance now appeals his conviction and sentence, claiming that the sections of the Act upon which his conviction was

predicated violate the due process and equal protection clauses of the United States and Illinois Constitutions. For reasons that follow, we affirm Lance's conviction and sentence.

Evidence at trial revealed that Steven Lance began working for Woodstock Die Casting in November 1988. In the course of his employment, he met Robert Miller (a/k/a Lawrence Miller and Anthony Rizzo), who also worked there. According to Miller's testimony, he and Lance became friends after they discovered that they were both users of cocaine. Miller testified that in January 1989 he and Lance, at Lance's suggestion, agreed to split the cost of a quarter ounce of cocaine. Lance procured the cocaine through his supplier, Mark Branwell. Branwell delivered the cocaine to Lance's home, where Miller then spent the night "partying" (*i.e.*, "smoked the coke") with Lance and Lance's brother. Subsequent to that incident, Miller obtained cocaine through Lance on at least two other occasions and "partied" with him as well.

In February 1989 Miller agreed to act as an informant for the Illinois State Police Northeastern Metropolitan Enforcement Group (NEMEG). When Miller entered the informant program he apparently had a rather significant criminal background, was on probation for a 1987 drug conviction and was experiencing some legal problems. In any event, as a result of his participation in the program, he became involved with Inspector Uher, who was a police officer with the Crystal Lake police department appointed to work as an undercover narcotics officer with NEMEG.

On May 29, 1989, Uher contacted Miller by phone. Miller indicated that he knew someone who would sell cocaine, naming Lance and Branwell. Miller then arranged a drug purchase for Uher with Lance, contacting Lance by phone and agreeing to purchase two ounces of cocaine for $1,600.

At 5:30 p.m. on May 31, 1989, Miller met Uher at the NEMEG task force office in McHenry County. Miller then rode with Uher in Uher's car to Lance's residence in Northlake. When they arrived at Lance's residence, Lance and Branwell met the car at the curb. Miller introduced Uher as his friend "Mike." Lance then indicated that the cocaine wasn't there yet and told Branwell to go into the house and make a phone call. When Branwell returned, Lance told Uher and Miller that they had to go to Toys-R-Us on North Avenue in Melrose Park to pick up the cocaine. Lance and Branwell got into Lance's car and drove off, followed by Uher and Miller in Uher's car.

After the two cars parked in the parking lot of Toys-R-Us, Lance and Branwell exited their car. Branwell approached Uher's car and

asked Uher for the money, indicating that "she" would be there soon. Uher refused to turn over the money without first seeing the cocaine. Shortly thereafter a white Camaro entered the parking lot. The car had two occupants, a male Hispanic and a female Hispanic. Branwell approached the Camaro and spoke with its occupants. Branwell then came back to Uher and asked for the money. When Uher refused again, Branwell returned to the Camaro. This time when Branwell came back to Uher's car he had some white powder cupped in his hand. He presented it to Uher and told him to "check it out." Uher got angry, insisting that he could not be sure that the cocaine he was purchasing was the same as the sample. Again Branwell went back to the Camaro. When he returned to Uher, he told Uher that he could meet with "her."

Uher and Branwell then walked over to the Camaro. Uher flashed his roll of money and demanded to see the cocaine. The woman in the car then reached under the console of the car and pulled out a clear plastic bag containing a white powder. Uher then gave the arrest signal to his surveillance team. The team moved in and arrested Branwell, Lance and the two occupants of the car. The plastic bag containing the white powder was recovered and it was later determined to contain 45.1 grams of 66% pure cocaine.

On appeal Lance does not deny that he arranged and participated in a planned sale of cocaine. Rather, Lance contends that his conviction for delivery of a controlled substance should be reversed because the statutes under which he was convicted, namely, sections 401(a)(2)(A) and 102(h) of the Act, are unconstitutional.

Section 401(a)(2)(A) of the Act states in pertinent part:

"Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog. ***

(a) Any person who violates this Section with respect to the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (c), (d), (e), (f), (g) or (h) to the contrary, is guilty of a Class X felony and shall be sentenced to a term of imprisonment as provided in this subsection (a) and fined as provided in subsection (b):

* * *

(2)(A) not less than 6 years and not more than 30 years with respect to 15 grams or more but less than 100 grams of a sub-

stance containing cocaine, or an analog thereof." Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(A).

Section 102(h) states:

" 'Deliver' or 'delivery' means the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." Ill. Rev. Stat. 1989, ch. 56½, par. 1102(h).

Lance contends that these sections of the Act and section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 8—4) are statutes *in pari materia* and that, as such, they must be construed in harmony with one another.

Specifically, Lance argues that because section 8—4(c)(2) states that "the sentence for attempt to commit a Class X felony is the sentence for a Class 1 felony," sections 401(a)(2)(A) and 102(h) of the Act must be held unconstitutional because these sections, when allocating penalty, fail to differentiate between an attempted delivery of a controlled substance and the completed act. Furthermore, Lance contends that because the cited sections of the Act treat an "attempted delivery" the same as an "actual delivery," these sections contravene the legislative intent expressed in section 100 of the Act. (See Ill. Rev. Stat. 1989, ch. 56½, par. 1100.) Accordingly, Lance concludes that sections 401(a)(2) and 102(h) violate the equal protection and due process clauses of the Federal and State constitutions. We disagree.

Lance cites two cases, *People v. Stupka* (1992), 226 Ill. App. 3d 567, 589 N.E.2d 1068, and *People v. Lev* (1988), 166 Ill. App. 3d 173, 519 N.E.2d 1168, in support of his position on appeal. However, these cases not only fail to support his position, they support the opposite conclusion.

In *Lev* the defendant was charged with and convicted of attempted possession of a controlled substance with the intent to deliver under section 8—4, the general attempt statute, based upon his attempted purchase of 30 grams of cocaine from an undercover agent. On appeal defendant challenged his conviction, contending that an attempt to possess a controlled substance with the intent to deliver, the offense with which he was charged, did not exist as an offense in Illinois. He claimed that it was tantamount to a charge of "attempted attempt to deliver" and, thus, was illusory. He also challenged the constitutionality of the offense. The court rejected these claims, finding that the legislature's failure to specifically prohibit the inchoate offense did not preclude the application of the general attempt statute. It further held that the penalty for the offense did not offend constitutional requirements.

Subsequently, the *Lev* court went on to express its opinion as to the applicability of section 8—4 to a delivery of a controlled substance. The court indicated that section 8—4 of the Criminal Code could apply to a delivery, such as where a person is frustrated in his attempt to deliver or transfer possession of a controlled substance. It is clear, however, that the *Lev* court did not consider the definition of "deliver," as set forth in the Act, when it made the statement concerning the application of the general attempt statute.

The *Stupka* case, which is factually similar to the case at bar, involved a defendant (Stupka) who made arrangements to sell cocaine to an undercover police officer. The officer and Stupka met with Stupka's supplier in a parking lot. The supplier was sitting in a car in the parking lot when the officer and Stupka approached him. The officer turned over the money to the supplier and was handed a paper bag. The officer was then told to throw the bag in a trash barrel located in front of the supplier's car, where he would find the cocaine. The arrest signal was given and Stupka was arrested. Cocaine was then recovered from the trash barrel.

Stupka, who was charged and convicted of unlawful delivery of a controlled substance, cited to *Lev* and argued that he was not proved guilty of unlawful delivery of a controlled substance under the Controlled Substances Act, but only of an attempt to commit that offense under the attempt statute. (Ill. Rev. Stat. 1989, ch. 38, par. 8—4.) The court rejected the argument, finding that in the case before it a constructive transfer of possession of a controlled substance had taken place, for which Stupka was legally accountable.

In addition the court reviewed the *Lev* decision and considered whether the offense of "attempted unlawful delivery" existed under the general attempt statute, as claimed by Stupka. First, the court held that the *Lev* court's proposed creation of the offense of "attempted unlawful delivery" was mere *dicta*. Next, the *Stupka* court concluded that the principle of preemption applied, *i.e.*, that the more general statute was preempted by the specific one. Thus, the court found that the legislature's express inclusion of an attempted transfer in the definition of the substantive offense clearly demonstrated the legislature's intent to equate an attempted transfer with the seriousness of a completed delivery and, therefore, preempted the general attempt statute. Accordingly, the court held that Stupka was properly charged, convicted and sentenced for the unlawful delivery of a controlled substance despite the fact that a completed delivery did not occur.

In the present case Lance acknowledges that, as the *Stupka* court determined, his actions fell within the parameters of the offense of unlawful delivery. His position is that the offense, as such, does not withstand constitutional muster since it treats similarly situated groups differently, *i.e.*, it treats those persons charged with an attempt to deliver a controlled substance differently than those persons charged with an attempt to commit some other crime. We, however, find no violation of the mandates of our Federal and State constitutions.

■■ Statutes are presumed to be constitutional, and it is the party challenging the constitutionality of the statute who carries the burden of proving the violation. (*People v. Hamm* (1992), 149 Ill. 2d 201, 595 N.E.2d 540.) The equal protection clauses of the United States and Illinois Constitutions do not prevent States from treating different classes of persons differently and, in fact, may treat similarly situated persons differently if there is a rational basis for doing so, the persons are not members of a suspect class and no fundamental right is involved. (*People v. Tosch* (1986), 114 Ill. 2d 474, 501 N.E.2d 1253.) The same is true when a party challenges the constitutionality of a statute on a due process claim. If no fundamental rights are involved, the question boils down to whether the penalty provision bears a rational relationship to a legitimate purpose and is neither arbitrary nor discriminatory. *People v. Hamm*, 149 Ill. 2d at 215-16.

■■ First of all, there is no question that the class of persons involved here, *i.e.*, those persons who attempt to traffic in cocaine but do not achieve their goal, is not a suspect class and that no fundamental rights are involved. Thus, the question is whether we can find any rational basis for the legislature's decision to treat those persons caught in the act of dealing drugs the same as those persons who were caught in the act of dealing drugs but did not consummate the act.

We find the difference between these two groups to be one without a distinction. As noted by defendant, the legislative intent, expressed in section 100 of the Act, is to deter the unlawful and destructive abuse of controlled substances. Thus, we believe that equal treatment of these two groups is rationally related to the legislative purpose of deterring drug trafficking and abuse. No violation of equal protection or due process is evidenced by the legislature's defining the offense of "delivery" to include an attempted delivery and penalizing both equally.

The rationale employed in *People v. Patten* (1992), 230 Ill. App. 3d 922, 595 N.E.2d 1141, is applicable here. In *Patten*, the court held

that it was constitutionally within the legislature's prerogative to advance its goal of deterrence by defining child abduction to include attempted child abduction and penalizing attempted abductors as harshly as those who are able to accomplish the crime.

For all the reasons stated above, we affirm Lance's conviction and sentence for unlawful delivery of a controlled substance.

Affirmed.

McNULTY and COUSINS, JJ., concur.