THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WARREN WENGER, Defendant-Appellant.

First District (1st Division)    No. 1—92—4322

Opinion filed March 8, 1994.

Rita A. Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D.

Carroll, and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People. ·

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant Warren Wenger was found guilty of child abduction. The trial judge sentenced defendant to three years' imprisonment in the Illinois Department of Corrections. On appeal, defendant contends: (1) that the prosecutor's inability to prove the elements of unlawful intent and an attempted entry into a car requires reversal of the conviction for child abduction; (2) that the statute defining the offense of child abduction, as applied to defendant, created an unconstitutional presumption that he was acting "for other than a lawful purpose"; (3) that the child abduction statute violates the Illinois due process clause by including "attempt" within the completed offense and by proscribing behavior not within the scope of the legislative interest; (4) that defendant's conviction for the completed crime of child abduction based on an "attempt" violated the proportionate penalties provision of the Illinois Constitution, the equal protection clause of the Federal Constitution, and the principle of separation of powers; and (5) that the "attempt luring" provision of the child abduction statute is unconstitutionally vague under Federal due process guarantees by subjecting persons engaging in innocent behavior to criminal prosecutions and by leaving judges or juries to decide arbitrarily what is prohibited.

In November 1991, defendant was charged with one count of child abduction for attempting to lure A.T., a child under the age of 16 years, into a motor vehicle without parental consent for other than a lawful purpose. The State's case consisted of the testimony of A.T., M.P., and Bob Leamy.

According to the testimony of M.P., A.T.'s 15-year-old stepsister, on September 17, 1991, at approximately 7:45 p.m., she and A.T. were riding their bicycles when they stopped about a block from home in the mouth of an alley to speak to Bob Leamy, a 17-year-old friend. M.P. stated that it was "dark out" and that, as they were speaking, a black and yellow jeep without its headlights on drove down the alley "pretty fast" toward them. M.P. testified that she and A.T. then rode off on their bicycles. M.P. further stated that she had seen the jeep before. She said that on July 1, 1991, she was sitting alone on the steps of her mother's apartment when she observed defendant pass by three times. According to M.P., the jeep then stopped in front of her and she "went upstairs to tell [her] mother."

M.P. testified that after they left the alley, she and A.T. rode "to my right and just left" toward the home of their friends, the D'Ama-

dioses. When they left the D'Amadioses' home and rode back down 59th Street, M.P. stated that she saw defendant again from about 10 feet as he pulled his jeep out of his friend's driveway on 59th Street. She stated they then turned their bicycles around and rode up 59th Street toward Austin. According to M.P. when they turned down Austin, they saw the jeep for the third time as it came out of the alley behind defendant's friend's home and came toward them. They then turned down 25th Street toward 59th Street and saw defendant driving down a different alley. They turned back down 59th Street toward 25th Street again and at that moment they encountered M.P.'s father. M.P. further testified that defendant did not signal to her or make any motions toward her or speak to her. She also stated that the jeep was "[n]ot following us but cutting us off."

A.T., the 12-year-old victim, testified that she and M.P. were speaking to Bob Leamy in the mouth of an alley when she saw the black and yellow jeep drive toward them down the alley without its headlights on. According to A.T., she then drove toward Austin Street to the "Damatos'" home. She said she was not with M.P. She then stated she was still alone when she left the "Damatos'" home and drove toward "an alley behind [M.P.'s] apartment." She stated that she was riding down 25th Street and was "starting to go down [M.P.'s] street" when she "stopped because I seen his jeep sitting there." A.T. testified that the jeep was parked in the street and defendant was in the driver's seat speaking to some girls. She stated that he then motioned three times for her to come toward him and she turned and rode away "trying to find [M.P.]." She testified that she was approximately five car lengths away and defendant did not say anything to her. According to A.T., she then met up with M.P. and her father, who was driving down the street.

Bob Leamy, a 17-year-old high school student, testified he was a friend of M.P.'s. He stated that he was talking with M.P. and A.T. in the mouth of the alley for approximately 5 to 10 minutes when a black and yellow jeep without its headlights on came down the alley towards them. He said that the girls rode off and told him that "if somebody comes looking for us, you haven't seen us." According to Leamy, the jeep pulled up and the driver asked him if he had seen two girls on bicycles. Leamy stated that he responded by saying, "I seen them, but I didn't know where they went." Leamy testified that the jeep then made a left out of the alley and then made another left down 59th Street. Leamy was unable to identify defendant as the driver of the jeep.

After Leamy's testimony the State rested and defendant moved for a directed verdict on the grounds that the State failed to prove

the charge of child abduction beyond a reasonable doubt. Defendant contended that the State introduced insufficient evidence to prove that he "intentionally attempted to lure A.T. into a car." Additionally, he asserted that no testimony had been introduced on the issue of consent which was an element of the offense. The trial judge denied the motion without comment.

Defendant then testified in his own defense. He stated that on September 17, 1991, at approximately 7:45 p.m., he was visiting his friend Tim Sepanik. Sepanik's house was in the middle of the block bordered in the front by 59th Street and in the back by the alley in question. He stated that he parked in the alley behind Sepanik's house, but the gate was locked. Therefore, he restarted his car, turned the lights on and pulled out of the alley. He stated that he drove around to the front of the house, parked in Sepanik's driveway, and went inside. According to defendant, Sepanik was eating supper "so then I just left again." Defendant stated that he visits his friend "almost every night."

Defendant denied following M.P. and A.T. around that night and, in fact, denied even seeing them. He admitted, however, that he had seen A.T. once before. He then recounted his version of the events on July 1, 1991. He stated that he saw A.T. sitting on the sidewalk and he smiled at her as he drove past. He testified that while he was at the gas station A.T.'s mother arrived and asked him what he was doing with her daughter and threatened to press charges against him. He asserted, however, that he had never been convicted of any misdemeanors or felonies.

He also denied ever seeing Bob Leamy. He asserted that if Leamy was in the alley, "[h]e must have been behind me and I didn't see him." He denied ever motioning for the girls to come over to his car. He also denied knowing the girls' mother and admitted that he did not have permission to pick them up in his jeep. He asserted that he went straight home from Sepanik's house and was sitting in his jeep drinking a soda pop when he was arrested. At the conclusion of defendant's testimony, the defense rested.

After closing statements, the trial judge found defendant guilty of child abduction. In coming to his conclusion, the judge reasoned:

> "What occurs is that this man comes down the alley. He says he saw—Mr. Wenger says he saw no one, not the girls, not Mr. Leamy, turned left the same way they say they turned, went around to the front to his friend Tim's house.
>
> [Defendant] says he never saw these girls that night, that everything is made up. But it seems that these girls must have seen him because he admitted being in the driveway of Tim, and he admitted that when he went in the house Tim was eating.

The back gate was locked so he had to go around the front. Tim was eating so he left and he pulled out of the driveway. That's what both of the witnesses said. They said he pulled out of that driveway.

Now the mere fact that he may have been talking to some other girls and then he turned around and started waving, that's what luring children is all about, waving, trying to get them to come near you. The fact that she didn't hear what he was saying if he was saying anything, really means absolutely nothing.

The fact that our learned counsel, he's a very good lawyer Mr. Mather turns around and decides that it was five car lengths.

I mean you have to listen to the young lady of 11 years old. God knows if she really knows what five car lengths is, we're making an assumption that she knew that.

She did know one thing, she knew he was waving at her. She knew every way she went he was there.

First of all I'm going to find him guilty. Then I'm going to make a statement. Under the new stalking laws he would be a prime candidate for stalking."

At the sentencing hearing, the State introduced the testimony of Detective Joseph Sirgedas in aggravation. Sirgedas testified that when he arrested defendant on July 1, 1991, an inventory was done of defendant's vehicle. He stated that they found the following items in defendant's car at the time of his arrest: "Numerous sex toys and lubricants. There were three towels, one prolonging cherry tube, one bottle of petroleum cream for women, one bottle of vaseline, two Rough Rider condoms, one bottle of wet personal lubricant, and two rubber dildos." In mitigation, defendant asserted that he had no prior convictions, was seeing a psychiatrist and taking prolixin injections. He asserted that at the time of the incident he had stopped his medication because he was unable to afford it. He maintained, however, that he had since resumed taking his injections. The trial judge sentenced defendant to three years' incarceration in the Illinois Department of Corrections. Defendant then filed this timely appeal.

■ Defendant's first contention on appeal is that the State failed to prove two elements of the offense of child abduction, namely, the elements of "unlawful intent" and "attempted entry." Specifically, defendant argues that defendant's alleged waving gesture to A.T. was insufficient to establish either a specific unlawful intent or that he was attempting to lure A.T. into his jeep. The State, on the other hand, asserts that the evidence was clearly sufficient to prove beyond a reasonable doubt that defendant intentionally attempted to lure A.T. into his vehicle for an unlawful purpose.

Section 10—5(b)(10) of the Criminal Code of 1961 (Ill. Rev. Stat.

1991, ch. 38, par. 10—5(b)(10) (now 720 ILCS 5/10—5(b)(10) (West 1992))) provides in pertinent part:

"(b) A person commits child abduction when he or she:

\* \* \*

(10) Intentionally lures or attempts to lure a child under the age of 16 into a motor vehicle \*\*\* without the consent of the parent or lawful custodian of the child for other than a lawful purpose.

For the purposes of this subsection (b), paragraph (10), the luring or attempted luring of a child under the age of 16 into a motor vehicle \*\*\* without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose." Ill. Rev. Stat. 1991, ch. 38, par. 10—5(b)(10) (now 720 ILCS 5/10—5(b)(10) (West 1992)).

We must agree with defendant that the evidence was insufficient to show that he attempted to lure A.T. into his jeep. Thus, the State also failed to present "prima facie evidence of other than a lawful purpose." According to the testimony of the State's witnesses, A.T. and M.P. saw defendant four times on September 17, 1991. The first time they saw him he was driving out of the alley behind his friend's house while they were speaking with Leamy at the mouth of the alley. It is uncontested that defendant then drove around the block and parked in his friend's driveway. The second time they saw defendant, he was exiting his friend's driveway. The third time they saw him he was coming out of the alley in front of them again. Apparently, the fourth time he was parked and speaking to some girls from his jeep.

M.P. and A.T. were not positive defendant was following them and the evidence surely does not establish that fact. Consequently, the only evidence presented which goes to the element of "attempted luring" is A.T.'s testimony. A.T. testified that she saw defendant's jeep parked and defendant in the driver's seat speaking to some girls who were standing outside the vehicle. A.T. said that when he noticed her he waved three times for her to come toward him. She stated she then turned her bicycle and rode away. According to A.T., defendant never said anything to her. This conduct is simply not sufficient to prove that defendant was attempting to lure A.T. into his vehicle.

In every case of which this court has been made aware, a defendant convicted of child abduction was clearly pursuing the child and did more than simply wave. In *People v. Rogers* (1989), 133 Ill. 2d 1, 5, 549 N.E.2d 226, defendant asked two boys to help him unload newspapers for $5, briefly touched the boys' "private parts," and then offered them money for sex. In *People v. Patten* (1992), 230 Ill. App. 3d 922, 924, 595 N.E.2d 1141, defendant stopped his car near the

child, exited his vehicle leaving the door open, reached out for the child and said "come here, I want to give you a kiss." In *People v. Marcotte* (1991), 217 Ill. App. 3d 797, 577 N.E.2d 799, defendant told the minor child she was pretty, motioned her over to his car, and asked her if she wanted him to pick her up after school to take her to get her hair done. In *People v. Joyce* (1991), 210 Ill. App. 3d 1059, 1063, 569 N.E.2d 1189, defendant honked and waved to the child, told her to get into his truck, and said "I don't bite and I will give you a ride home." In *People v. Embry* (1988), 177 Ill. App. 3d 96, 98, 531 N.E.2d 1130, defendant stopped his car adjacent to several girls and stated, "[g]et in the damn car right now." We believe that without some affirmative conduct evidencing an intent to lure a child into a vehicle such as apparent in the above-cited cases the innocuous gesture of waving is insufficient to prove beyond a reasonable doubt that defendant was attempting to lure the child into his jeep.

■ Defendant's remaining arguments all challenge the constitutionality of the child abduction statute. In light of our determination that defendant was not proven guilty beyond a reasonable doubt, however, we need not address these arguments. Additionally, we note the fundamental principle of constitutional law that a reviewing court will not address constitutional questions if the case may be disposed of on other grounds. *Rogers*, 133 Ill. 2d at 8, 549 N.E.2d at 229.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

Reversed.

CAMPBELL, P.J., and MANNING, J., concur.