# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sweigart*, 2013 IL App (2d) 110885

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN SWEIGART, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0885 |
| Filed | March 27, 2013 |
| Rehearing denied | April 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for child abduction was upheld over his contention that it was insufficient to establish that defendant's conduct in speaking to an eight-year-old boy who was sitting on a bench in a grocery store where other members of his family were shopping brought him within "dangerous proximity of success" for purposes of the offense, since the law only requires a "substantial step" to sustain a conviction for child abduction, and defendant took such a step when he asked the child if he wanted to come to defendant's home to play. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-3559; the Hon. Edward C. Schreiber, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices McLaren and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant, Stephen Sweigart, appeals from his conviction of child abduction (720 ILCS 5/10-5(b)(10) (West 2008)). He was charged with attempting to lure a child to his home from a grocery store. Defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt, because there was not a "dangerous proximity of success" when the child's family was nearby and defendant's vehicle was in the parking lot. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was charged on April 29, 2010, in connection with a December 26, 2009, conversation he had with O.W., who was referred to at trial as "Eddie" and who was eight years old at the time. Defendant was also charged with other offenses related to items found in his van. He pleaded guilty to some of those charges, and others were dismissed by the State. On May 25, 2011, a bench trial was held on the child abduction charge.

¶ 4    At trial, Eddie testified that, on December 26, 2009, defendant approached him in a grocery store. Eddie was sitting on a bench near the self-checkout line and was playing with action figures he had gotten for Christmas. His mother was approximately 10 feet away at the self checkout with Eddie's sister, Mikayla.

¶ 5    According to Eddie, defendant approached him and said, "do you want to come to my house and play with jets or choo-choo trains?" Eddie said "no," and defendant replied, "why not, it is going to be fun." Eddie then heard his mother tell Mikayla to go check on him, and defendant "scurried off away," leaving the store. Mikayla came over to Eddie, but he was scared and unable to talk to her. Defendant never touched Eddie and made no gestures with his hands. Mikayla testified that she saw defendant talking to Eddie, that her mother asked her to see what was wrong, and that Eddie did not answer her.

¶ 6    Eddie told his mother what defendant had said. After speaking to store employees, who took down the license plate number of defendant's van, the family left the store in order to

-2-

take medicine to a sick relative. The police spoke to the family at their home later that evening. The next day, a television news reporter came to their house, and Eddie said that he found it exciting to talk to the reporter.

¶ 7     Eddie's mother testified that the family was at the store buying Gatorade for a sick relative. She was unable to hear what defendant said to Eddie, but he spoke to Eddie for 30 to 40 seconds, and Eddie looked scared, so she asked Mikayla to go over to him. When Mikayla started to move toward Eddie, defendant walked out the door. Eddie would not say what happened until he was asked five or six times. Eddie's mother did not give defendant permission to ask Eddie to go anywhere with him.

¶ 8     The State played a surveillance DVD of the grocery store. The video showed that Mikayla did not walk all the way up to Eddie. Instead, she walked to the end of the checkout counter, which was a few feet from where Eddie and defendant were located.

¶ 9     The police were called, but the family did not wait for them to come to the store, because they wanted to get back to their sick relative. They waited for defendant to leave the area, but he did not, so store employees escorted them to their car. Eddie's mother said that, while she was driving home, she spoke to Officer Stacey Snyder and told Snyder that she wanted to fill out a police report, but Snyder said that a report could not be made because it was a "he said, she said" situation. The next day, Eddie's mother met with Detective Edward Corral and filled out a police report.

¶ 10    Snyder testified that she was the first responding officer, that she spoke to Eddie's mother by telephone, and that Eddie's mother said she did not want to fill out a report, did not want to come back to the store, and did not want Snyder to come to her home. However, Snyder later went to the family's home and spoke to Eddie and his mother. Snyder testified that Eddie's mother did not want to sign a written statement and indicated that Eddie either had said that nothing happened or had said nothing when Mikayla had asked him what had happened.

¶ 11    Officer Lee Catavau also responded to the call and stopped defendant's van. Catavau said that defendant appeared nervous and shaky. Defendant acknowledged being at the grocery store, but said that he talked to a child in the toy aisle and that he mentioned having some fireman toys at his house. Catavau noticed that the van smelled of cannabis and was littered with items. Defendant gave permission to search his van and, among other items, officers found a loaded handgun, an unloaded handgun, 10 throwing stars, a machete, a cannabis pipe, children's toys, lingerie, wigs, and sex toys, including restraint devices. Defendant's home was approximately 2½ miles away from the grocery store. There, the police recovered two handguns, ammunition, and more throwing stars.

¶ 12    Corral and another detective interrogated defendant. Defendant said that he had talked to a boy in the toy aisle. When Corral asked if that was the same boy defendant talked to near the exit, defendant hesitated and did not respond. Defendant denied asking Eddie to come home with him and said that he told Eddie, "I have a futuristic fire truck at my house and I really want a choo-choo." When Corral pressed defendant for information, defendant changed the subject and talked about irrelevant matters.

¶ 13    When asked if he was attracted to little boys, defendant paused for a couple of seconds,

made a noise similar to "uh, uh, uh," and said "I don't think so." Defendant said he was attracted to young girls because of the way they "blossom," "flower," and "put their stuff out there." Defendant was not asked to provide his definition of "young." During the interrogation, defendant also spoke about the Disney character Tinkerbell, stating that he had sexual thoughts about her and masturbated while thinking about her. When asked if he ever role-played or dressed like Tinkerbell, defendant said that nobody could be Tinkerbell, and "only Tinkerbell can be Tinkerbell."

¶ 14    The court found defendant guilty. The court noted that there were inconsistencies in the evidence, stating that Eddie's mother did not look particularly alarmed in the video and that Mikayla did not walk all the way up to Eddie as was claimed. However, the court found Eddie to be focused, articulate, and credible. The court found that the video showed that defendant talked to Eddie near the exit, not in the toy aisle as he claimed, and that defendant's van would have been easily accessible from the exit. The court also noted significant circumstantial evidence based on the incriminating items in the van. Thus, the court found that defendant's contact with Eddie was more than just an innocuous wave, gesture, or comment and was affirmative conduct evincing an intent to lure Eddie out of the store.

¶ 15    Defendant's motion for a new trial was denied, and he was sentenced to three years' incarceration. He appeals.


¶ 16                                    II. ANALYSIS

¶ 17    Defendant contends that the evidence was insufficient to convict him. Specifically, he argues that the State failed to prove that his conduct brought him in "dangerous proximity of success" for child abduction.

¶ 18    "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). On a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. *Id.* Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard, a court of review must view in the State's favor all reasonable inferences drawn from the record. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 19    A person commits child abduction when he or she "[i]ntentionally lures or attempts to lure a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child for other than a lawful purpose." 720 ILCS 5/10-5(b)(10) (West 2008). "The phrase 'other than a lawful purpose' in the child abduction statute implies actions which violate the Criminal Code of 1961 (720 ILCS 5/1-1 *et seq.* (West 2008))." *People v. Velez*, 2012 IL App (1st) 101325, ¶ 30. The

required showing of "other than a lawful purpose" is a showing of criminal intent, or *mens rea*, which is a state of mind that is usually inferred from the surrounding circumstances. *Id.* Under section 10-5(b)(10), "the luring or attempted luring of a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose." 720 ILCS 5/10-5(b)(10) (West 2008).

¶ 20    A person is guilty of attempt when "with intent to commit a specific offense, he [or she] does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2008). The accused need not have completed the last proximate act to actual commission of a crime, and the defendant's subsequent abandonment of his criminal purpose is no defense. *People v. Hawkins*, 311 Ill. App. 3d 418, 424 (2000). However, mere preparation is not enough. *People v. Terrell*, 99 Ill. 2d 427, 433 (1984). "The child abduction statute criminalizes the act of luring a child, whether or not the act is successful, in order to protect children from further acts of violence." *Velez*, 2012 IL App (1st) 101325, ¶ 34. Under the statute, there is no requirement that a defendant must actually touch or harm the child in order to be guilty of child abduction. *Id.*

¶ 21    This court has looked to section 5.01 of the Model Penal Code (Model Penal Code § 5.01 (1985)) for assistance in determining the types of behavior that constitute an attempt. *People v. Jiles*, 364 Ill. App. 3d 320, 333 (2006). Under the Model Penal Code, as under section 8-4(a), an attempt has occurred when a person, acting with the required intent, "purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Model Penal Code § 5.01(1)(c) (1985).

¶ 22    The Model Penal Code lists types of conduct that shall not, as a matter of law, be held insufficient to support an attempt conviction, so long as the act is strongly corroborative of the actor's criminal purpose, including:

"(a) lying in wait, searching for[,] or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime; [and]

(d) unlawful entry of a structure, vehicle[,] or enclosure in which it is contemplated that the crime will be committed[.]" Model Penal Code § 5.01(2)(a)-(d) (1985).

This list demonstrates the Model Penal Code's emphasis on the nature of steps taken, rather than on what remains to be done to commit a crime. *Hawkins*, 311 Ill. App. 3d at 424. "Precisely what is a substantial step must be determined by evaluating the facts and circumstances of each particular case." *Jiles*, 364 Ill. App. 3d at 334.

¶ 23    Without some affirmative conduct evincing an intent to lure a child into a building or vehicle, merely waving at a child is insufficient to show an attempt at luring the child. *People v. Wenger*, 258 Ill. App. 3d 561, 567 (1994). For example, in *Wenger*, there was evidence that the defendant followed children with his vehicle and then waved at them while talking to some other people from the vehicle. The defendant never spoke to the children. The evidence was disputed as to whether he was beckoning the children to come to his vehicle.

In that instance, the First District found the evidence insufficient to convict. *Id.* at 566-67.

¶ 24    In comparison, in *Velez*, a 14-year-old girl was walking along a sidewalk after school, when the defendant smiled at her from his vehicle, honked his horn, and slowed in order to talk to her. The child then turned a corner and saw the defendant parked up the street. When she neared the vehicle, the defendant asked if she wanted a ride home. The child ignored him and walked faster, but the defendant continued to follow her with his vehicle, called her "baby girl," and again asked her if she wanted a ride home. He also leaned from the driver's seat to the passenger seat, motioning through the window for her to approach the vehicle. The defendant left when the child told him that she saw her mother and began to run toward her mother's car. *Velez*, 2012 IL App (1st) 101325, ¶ 31. There was evidence that the defendant then tried to change his appearance by shaving before he spoke to the police about the incident. *Id.* ¶¶ 32, 35. The First District concluded that the evidence was sufficient to convict because the defendant attempted to lure the child to his vehicle. *Id.* ¶ 38.

¶ 25    Likewise, in *People v. Joyce*, 234 Ill. App. 3d 394, 399 (1992), *overruled on other grounds*, *People v. Woodrum*, 223 Ill. 2d 286 (2006), the defendant honked and waved at a child, asked if the child wanted a ride, and said " '[c]ome on, I don't bite.' " The defendant drove away quicky when the child refused. About a month later, the defendant again followed the same child with his vehicle. We held that, under the totality of the circumstances, there was sufficient evidence to convict.

¶ 26    Here, the trial court was entitled to credit Eddie's testimony that defendant asked him if he wanted to come to defendant's home. This was clearly an attempt to lure Eddie to his home. His intent can be inferred from that conduct and, as in *Velez* and *Joyce*, was corroborated by other evidence in the case. Defendant quickly left the scene when Eddie refused and his sister approached, and he lied to the police about where he spoke to Eddie in the store. Further, the items in his vehicle provided circumstantial evidence of his intent.

¶ 27    Defendant contends that the evidence was insufficient because the State did not show that he was in "dangerous proximity of success," and he distinguishes cases such as *Joyce* on the ground that his vehicle was not immediately accessible. It has been said that an attempt requires the defendant to perform acts bringing him in "dangerous proximity" to success in carrying out his intent. See, *e.g.*, *People v. Norris*, 399 Ill. App. 3d 525, 532 (2010). This language originates from the dissent of Justice Holmes in *Hyde v. United States*, 225 U.S. 347, 387-88 (1912) (Holmes, J., dissenting, joined by Hughes and Lamar, JJ.), where he wrote:

> "An attempt, in the strictest sense, is an act expected to bring about a substantive wrong by the forces of nature. With it is classed the kindred offence where the act and the natural conditions present or supposed to be present are not enough to do the harm without a further act, but where it is so near to the result that, if coupled with an intent to produce that result, the danger is very great. [Citation.] But combination, intention, and overt act may all be present without amounting to a criminal attempt–as if all that were done should be an agreement to murder a man fifty miles away and the purchase of a pistol for the purpose. There must be dangerous proximity to success. But when that exists the overt act is the essence of the offence."

¶ 28    That principle is not wholly inconsistent with the modern rule, reflected in the Model Penal Code, that a substantial step is required in order to prove an attempt. As our supreme court has stated, "[m]ere preparation to commit a crime, of course, does not constitute an attempt to commit it. We feel however that an attempt does exist where a person, with intent to commit a specific offense, performs acts which constitute substantial steps toward the commission of that offense." *People v. Woods*, 24 Ill. 2d 154, 158 (1962); see also *Terrell*, 99 Ill. 2d at 442 (Simon, J., dissenting, joined by Goldenhersh and Clark, JJ.) (explaining "dangerous proximity" as the difference between mere preparation and attempt). However, the modern rule is substantially different. See *United States v. Farhane*, 634 F.3d 127, 146 (2d Cir. 2011) (observing the difference between the "dangerous proximity" test and the Model Penal Code approach). "By shifting the emphasis from what remains to be done to what the actor has already done, the Model Penal Code standards enable a trier of fact to find a 'substantial step' even where the commission of the crime still requires several major steps to be taken. The standards thus broaden the scope of criminal liability beyond that under the 'dangerous proximity' test." *People v. Smith*, 209 Ill. App. 3d 795, 801 (1991), *rev'd on other grounds*, 148 Ill. 2d 454 (1992). "The *** adoption of the expanded scope of 'substantial step' as provided by the Model Penal Code did not abrogate the general rule that mere preparation does not bring a defendant in 'dangerous proximity to success.' [Citation.] Rather, only clearly specific conduct which can only be directed at the specific identified victim or crime if 'strongly corroborative of the actor's criminal purpose' may be held a 'substantial step.' " *Id.* at 801-02 (citing Model Penal Code § 5.01(2) (1985)).

¶ 29    Here, defendant seeks to require a strong probability of physical success under the "dangerous proximity" test. But the law does not require such a strong probability of success. Instead, the law requires a "substantial step," and enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission is a sufficient act to constitute a substantial step. Model Penal Code § 5.01(2)(b) (1985). Defendant did that when he asked Eddie if he wanted to come to his home to play.

¶ 30    Even if we were to ignore the guidance from the Model Penal Code and apply a "dangerous proximity" test, our determination would be the same. As the trial court noted, defendant approached Eddie near the exit of the store. Although his van was outside in the parking lot, it was easily accessible. Further, although Eddie's family was nearby, they were not in earshot. The evidence permits the conclusion that defendant would have successfully abducted Eddie if Eddie had simply agreed to follow him. This readily strikes us as "dangerous proximity."

¶ 31                                    III. CONCLUSION

¶ 32    The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Accordingly, the judgment of the circuit court of Kane County is affirmed.

¶ 33    Affirmed.