2022 IL App (1st) 1200274-U
No. 1-200274

FIRST DIVISION
September 19, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18 CR 2576 |
| | ) | |
| KYLE WUNDERICH, | ) | |
| | ) | The Honorable |
| Defendant-Appellant | ) | Kerry Kennedy, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Walker and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* Defendant's conviction for child abduction and luring of a minor is affirmed as none of the State's evidence was so improbable, unsatisfactory, or inconclusive that it created a reasonable doubt of defendant's guilt and a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Defendant also executed a knowing and voluntary waiver of his right to a jury trial. Moreover, the trial court properly admitted other-crimes evidence.

¶ 2    Defendant, Kyle Wunderich, was charged with one count of child abduction (720 ILCS 5/10-5(b)(10)(A) (West 2015)) and one count of luring of a minor (720 ILCS 5/10-5.1(a) (West 2008)) following his November 16, 2017, arrest. Defendant executed a written jury waiver and the case

proceeded to a bench trial. The trial court found defendant guilty of both offenses and sentenced him to 24 months of sex offender probation, including an alcohol and drug evaluation and random urine tests and lifetime child sex offender registration. On appeal, defendant asserts: (1) he was not proven guilty beyond a reasonable doubt of child abduction and luring of a minor; (2) the trial court violated defendant's constitutional rights when the trial court accepted defendant's jury waiver without providing adequate admonitions that the waiver was knowing and voluntary; and (3) the trial court abused its discretion by allowing the State to introduce other crimes evidence where it was substantially more prejudicial than probative. For the following reasons, we affirm defendant's convictions for child abduction and luring of a minor.

¶ 3                                    BACKGROUND

¶ 4        Prior to trial, the State filed a motion seeking to admit other crimes evidence pursuant to common law principles as well as section 115-7.3 of the Code of Criminal Procedure (725 ILCS 5/115-7.3 (2016). The State explained that, in this case, the evidence would show that defendant, while driving a motor vehicle, told P.D., a 12-year-old female, to get into his motor vehicle, followed P.D. to a convenience store after she ran away from him, and waited in the parking lot while she was inside the store. The State further explained that, in the uncharged case, which occurred 15 days before the charged case, defendant, in his motor vehicle, approached M.S., a 6-year-old girl, as she was playing alone, beeped the horn of his vehicle and made a gesture with his fingers motioning for her to get into his motor vehicle. The State sought to introduce this evidence to show defendant's "intent, motive, lack of consent, and propensity to commit child abduction."

¶ 5        Defendant filed a written response to the State's motion and argued that the danger of unfair prejudice substantially outweighed any probative value related to the proposed other crimes evidence. Defendant further argued that there was no proximity in time between the two offenses,

there was no factual similarity between them, and there were no other relevant facts and circumstances to justify the inclusion of this evidence.

¶ 6      At the hearing on the motion, the State further argued that the two incidents occurred close in time in that they occurred 15 days apart, were factually similar in that both cases occurred in the same town and involved female juvenile children in which defendant pulled up in a motor vehicle and verbally or physically beckoned to each victim to enter his vehicle. The State also argued that other facts and circumstances weighed in favor of admitting the earlier incident was to not create the false impression to the trier of fact that the current case was an isolated incident. In response, defendant argued that the probative value of the prior incident was substantially outweighed by the risk of unfair prejudice to defendant, the similarities between the two incidents were not unique but were common in child luring cases, and the other case could cause confusion of the issues and lead to a trial within a trial. After hearing further argument from the parties during a hearing on the motion, the trial court granted the State's motion to admit other crimes evidence without further comment.

¶ 7      During a pre-trial status hearing three weeks before his bench trial commenced, defense counsel stated in defendant's presence that, "[h]e is requesting a bench trial." On the day the trial was set to commence, defendant executed a written jury waiver in open court, was questioned by the trial court regarding the execution of his written jury waiver form, and the cause proceeded to a bench trial.

¶ 8      At trial, P.D. testified that in October 2017, she was 12 years old and lived at Sterling Estates Trailer Park in Justice, Illinois. On October 25, 2017, between 5:00 and 6:00 p.m., she left the home that she shared with her parents to walk to a convenience store, the Quick Pick, located near

the entrance to the trailer park. She went there to purchase a soda for her mother, which she did on a regular basis. She walked along the side of the road as there were no sidewalks.

¶ 9     As she walked to the store, she heard a car horn beeping behind her. She turned around and saw a red truck on the other side of the street that was travelling in the same direction as her. She identified defendant as the driver of the red truck. She recognized defendant as someone she had previously seen "around the trailer park" on three or four occasions. Defendant pulled up to her in the red truck with the driver's window rolled down, and from twelve feet away, he asked her to get in the truck. She got scared because she did not know what he was going to do, told him "no" and ran to the Quick Pick.

¶ 10     She explained that she was scared based on what happened when she had previously encountered defendant. A few months before this incident, P.D. and a friend were playing tag with some other kids when defendant approached them and started to chase them around.  On another occasion, when she was alone walking down the street, defendant drove by her and asked her if she wanted to get in the bed of the truck to drive to the park. She testified that she felt "creeped out" by this encounter because he was a lot older than her. On a third occasion, she saw defendant when he came to her home and asked her father if he could cut their lawn. She did not remember having a conversation with defendant at that time. Defendant was not friends with her father.

¶ 11     P.D. ran to the Quick Pick, entered the store, and when she looked outside, she saw defendant quickly pull into the parking lot of the convenience store and park in the first parking spot next to the door. Then, P.D. saw defendant exit his truck and throw something into the back of his truck. She told Kokila Dave, the female owner of the store, that defendant asked her to get into his vehicle. Kokila Dave told her stay inside the store and get behind the counter if defendant entered

the store. Kokila Dave testified that she noticed that P.D. was acting "scared and nervous" but she did not look outside the door of the store as she was busy working at the cash register.

¶ 12    P.D. walked to another part of the store to get a soda and continued the look outside to see if defendant had left. She saw that he was sitting inside the truck with the engine on. Defendant remained in the parking lot for approximately three minutes, and then pulled out of the parking lot and went in the opposite direction. Kokila Dave saw the red truck leaving the parking lot, but she did not see who was inside the truck. P.D. waited a few more minutes, told Kokila Dave that she could leave now, and then ran home because she did not know if he would come back.

¶ 13    When P.D. arrived home, she told her father, Christopher Doolan (Doolan), what happened. Doolan testified that he noticed that P.D. had been gone longer than usual and when she arrived home, she had been running and was out of breath. He testified that she was "freaked out a little bit." He asked her what was going on, and she told him that defendant tried to get her to go into a truck. Doolan testified that defendant had previously driven past his home in a red truck and offered to cut the grass while Doolan's kids were outside playing. Doolan saw defendant a second time when Doolan was getting ready to go to work, and defendant pulled up and stopped to ask if he wanted to "party." Doolan told him no and that he had to get to work. That time, defendant appeared to be intoxicated and had an open beer in his hand. After this encounter, he told all three of his children that they should "watch out" for defendant and stay away from him. After P.D. told him what happened, Doolan got into his car looking for defendant and while driving around, saw a sheriff's police officer and reported what happened.

¶ 14    Two days later, P.D. went to the police station and identified defendant in a photo array. It was stipulated that on October 27, 2017, Detective Sanchez, who was a blind administrator and knew

nothing about the case, administered a photo array in which P.D. identified defendant as the person who drove a red truck, approached her, and asked her to get inside the truck.

¶ 15     The State presented the testimony of Serena Anglim (Anglim) as to the incident involving M.S., her 6-year-old daughter, and defendant. Anglim admitted that she had a pending felony charge in Grundy County, but she did not have an agreement with the State regarding her trial testimony. She testified that in October of 2017, she lived in the Sterling Estates Trailer Park with her mother and children. She had lived in that community for 13 years and knew defendant as he had previously been friends with Anglim's brother. She testified that she was not friends with defendant and estimated that she had spoken to him five times during the past eight years.

¶ 16     On October 10, 2017, she was on the balcony of her home with her one-year-old and two-year-old children. The balcony was located three to four feet away from the curb and adjacent to the driveway. She noticed that a red truck stopped in front of her, approximately two feet away. Defendant was driving the truck and rolled down his window. He asked her if she wanted to "smoke a blunt." She declined, but then he asked her if she wanted to have sex because he was "horny." She told him to "get the hell out of here." Defendant sped off, and she went inside with her children.

¶ 17     Later that day, M.S., her six-year-old daughter, went outside to play in the driveway while Anglim was in the kitchen. After Anglim heard a horn beep, M.S. ran inside and told her that a man in a red truck was driving around and beeping at her. Anglim told her that she could go back outside to play, but if she felt uncomfortable, she could come inside. About ten minutes later, M.S. went back outside, and Anglim heard a horn beep again. Her daughter told her that someone was beeping at her again.

¶ 18    Anglim went outside for a second time. Approximately three to five feet away, she saw M.S. sitting on a bicycle in the driveway and defendant inside the red truck which was parked on the curb of the driveway. She approximated that defendant was two feet away from M.S. at this time. She noticed that defendant made a motion towards M.S. with his left index finger and thumb extended "with a come here gesture." M.S. started crying and then ran into the house screaming. Anglim called the police because she was scared by what she saw. Defendant left the area, and Anglim later spoke to a police officer and told the officer what happened.

¶ 19    The trial court found defendant guilty of child abduction and luring of a child. The trial court sentenced him to 24 months' sex offender probation, alcohol and drug evaluation, and lifetime child sex offender registration.

¶ 20                                                   ANALYSIS

¶ 21                                          **I. Reasonable Doubt**

¶ 22    Defendant challenges the sufficiency of the evidence presented for his convictions of child abduction and luring of a minor. Regarding the offense of child abduction, defendant argues that there was insufficient evidence that he lured P.D. and that he acted with an unlawful purpose. As to the offense of luring of a minor, defendant argues that the evidence did not establish that he was a stranger to P.D. or her parents, that he intended to "persuade, lure or transport" P.D. away from a known location, and that he acted with an unlawful purpose. In turn, the State argues that the evidence at trial conclusively proved each of these elements beyond a reasonable doubt.

¶ 23    The due process clause of the fourteenth amendment safeguards a criminal defendant from conviction in state court except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *People v. Brown*, 2013 IL 114196, ¶ 48; *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). When considering a challenge to the sufficiency of the evidence in a

criminal case, a reviewing court's function is not to retry the defendant. *People v. Lloyd*, 2013 IL 113510, ¶ 42. Rather, a reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id*

¶ 24      This means that we must draw all reasonable inferences from the record in favor of the prosecution, and that "[w]e will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.'" *Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill.2d 206, 217 (2005)). In reviewing a trial court's decision, we must give proper deference to the trier of fact who observed the witnesses testify, because it was in the "superior position to assess the credibility of witnesses, resolve inconsistencies, determine the weight to assign the testimony, and draw reasonable inferences therefrom." *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 24. Circumstantial evidence is sufficient to sustain a conviction as long as it satisfies proof beyond a reasonable doubt of the charged offense. *People v. Hall*, 194 Ill.2d 305, 330 (2000).

¶ 25                                    **A. Child Abduction**

¶ 26      Initially, defendant contends that he was not proven guilty of child abduction beyond a reasonable doubt. Specifically, defendant argues that there was insufficient evidence to establish that he lured or attempted to lure P.D. and that he acted with an unlawful purpose. A person commits child abduction by intentionally luring or attempting to lure a child under 17 years of age into a motor vehicle without the consent of a parent or lawful custodian for other than a lawful purpose. 720 ILCS 5/10-5(b)(10)(A) (West 2015).

¶ 27      After viewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found that defendant lured P.D. The Code defines "[l]uring" as "any

knowing act to solicit, entice, tempt or attempt to attract the minor." 720 ILCS 5/10-5(a)(2.2) (West 2015). To "attract" can be defined as "to cause to approach" or "to pull to or draw toward oneself." *Merriam-Webster's Collegiate Dictionary* (10th ed. 2000).

¶ 28    Here, defendant's actions certainly constituted an "attempt to attract" when he approached P.D. in his truck while she was alone and walking down a street, Defendant repeatedly honked his horn to get her attention and then asked her to get in his truck. When she said no and ran away from him, he followed her to the Quick Pick convenience store, and remained parked outside the store entrance for several minutes, with his engine still running, while P.D. waited inside the store for him to leave. Certainly, not only was defendant's act of honking his horn done so to attract the attention of P.D., but when he got her attention, he approached closer to P.D. and asked her to get into his truck.

¶ 29    Our decision is guided by *People v. Sweigart*, 2013 IL App (2d) 110885, a case in which the defendant approached the eight-year-old victim at the grocery store and asked him if he wanted to come over to his house to play, and when the victim said "no," the defendant replied, "why not, it is going to be fun." The court found that when the defendant asked the victim if he wanted to come to the defendant's home, "[t]his was clearly an attempt to lure [the victim] to his home." *Sweigart*, 2013 IL App (2d) 110885, ¶ 26.

¶ 30    In upholding the defendant's conviction, the court in *Sweigart* looked to *People v. Joyce*, 234 Ill.App.3d 394 (2nd Dist. 1992), *overruled on other grounds, People v. Woodrum*, 223 Ill.2d 286 (2006). In *Joyce*, the defendant's conviction for child abduction was upheld where the defendant honked and waved at the victim, asked if the child wanted a ride, and said "'[c]ome on, I don't bite.'" *Joyce*, 234 Ill.App.3d at 399. The defendant then drove away quickly after the victim refused but followed the same victim with his vehicle a month later. *Id.* These cases illustrate that

the element of luring can be established where a defendant attempts to attract the victim by honking the horn of the vehicle he was driving before asking the victim to get into his vehicle.

¶ 31      Moreover, defendant points to several cases to support his contention, however, these cases are unpersuasive. For instance, defendant cites to *In re Ryan B.*, 212 Ill.2d 226, 231 (2004), a case in which the minor respondent was convicted of sexual exploitation of a child, and the issue on appeal was whether he had "enticed, coerced or persuaded" based upon his request for the victim to lift up her shirt exposing her breasts to him. Defendant relies upon this case for the proposition that the child abduction statute does not punish a request for a minor to enter a vehicle. However, in the instant case, because we have found that defendant's actions constituted an "attempt to attract," we need not determine whether defendant's actions constituted an act that "entices, coerces, or persuades" as required for the offense of sexual exploitation of a child. 720 ILCS 5/10-5(a)(2.2) (West 2015).

¶ 32      Defendant also contends that there was insufficient evidence to establish that he acted with an unlawful purpose under the child abduction statute. Under section 10-5(b)(10), "the luring or attempted luring of a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child shall be *prima facie* evidence of other than a lawful purpose." 720 ILCS 5/10-5(b)(10) (West 2015); *Sweigart*, 2013 IL App (2d) 110885, ¶ 19. "The phrase 'other than a lawful purpose' in the child abduction statutes implies actions which violate the Criminal Code of 1961 (720 ILCS 5/1-1 *et seq*. (West 2015))." *People v. Sweigart*, 2013 IL App (2d) 110885, ¶ 19 (quoting *People v. Velez*, 2012 IL App (1st) 101325, ¶ 30). The required showing of "other than a lawful purpose" is a showing of criminal intent, or *mens rea*, which is a state of mind that is usually inferred from the surrounding circumstances. *Sweigart*, 2013 IL App (2d) 110885, ¶ 19; *Velez*, 2012 IL App (1st) 101325, ¶ 30.

With a permissive presumption, the fact finder is free to accept or reject the suggested presumption. *People v. Hester*, 131 Ill.2d 91, 99-100 (1989). "[T]here must be a rational connection between the facts proved and the facts presumed and the ultimate fact must be 'more likely than not to flow' from the basic fact." *Hester*, 131 Ill.2d at 91.

¶ 33       In reviewing the evidence to determine if defendant acted with a lawful purpose, we recognize that "[t]he child abduction statute criminalizes the act of luring a child, whether or not the act is successful, in order to protect children from further acts of violence. Under the statute, there is no requirement that a defendant must actually touch or harm the child in order to be guilty of the crime of child abduction." *People v. Velez*, 2012 IL App (1st) 101325, ¶ 34. "The legislative history of section 10-5(b)(1) reveals the concern that attempted luring of a child is as serious a threat to the safety of a child as a successful abduction." *Velez*, 2012 IL App (1st) 101324, ¶ 34 (citing *People v. Williams*, 133 Ill.2d 449, 457 (1990)).

¶ 34       Here, looking at the surrounding circumstances, the trial court properly found that defendant's actions towards P.D. were for other than a lawful purpose. The evidence adduced at trial showed that P.D. was a 12-year-old girl who was walking along a street by herself when defendant, a 22-year-old man whom P.D. had only previously seen three times, drove his truck towards her from behind her and honked his truck horn several times to get her attention. At that point, with his truck window down, defendant asked her to get into his truck, but P.D. told him "no," and then ran a couple blocks to a convenience store where she knew the owners. When P.D. ran to the convenience store, defendant followed her in his truck, parked his truck in front of the store with the engine still running, and remained there for approximately three minutes before leaving the scene.

¶ 35      We find a rational connection between the fact proved, *i.e.*, that defendant attempted to lure a child under 17 into his vehicle, and the fact presumed, *i.e.*, that defendant did so with other than a lawful purpose. Defendant used words and actions designed to direct P.D. to enter his truck. P.D. testified that she ran to the convenience store because she was scared by what happened. Moreover, this was not the only time that defendant approached P.D. in his truck while she was walking alone. P.D. testified that sometime before this incident, she was alone walking down the street when defendant was driving his truck and asked her if she wanted to get in the bed of his truck to drive to the park. We also consider this evidence along with the other crimes evidence showing that defendant approached another minor female as she was playing outside, pulled up his truck and honked his horn to get her attention, and then made a hand gesture towards her to come towards him while he was seated in his truck. The rational inference to be drawn from this evidence is that defendant had an unlawful intent when he attempted to lure P.D. into his truck.

¶ 36      When other courts have considered this issue, they have relied on similar facts to support a finding that the evidence established that the defendant had an unlawful purpose. For instance, in *Velez*, the defendant, a 41-year-old man, was driving his vehicle and approached the victim, a 14-year-old girl who was walking alone, smiled at her, honked his horn, slowed his van to talk to her, but the victim tried to ignore him and walk faster. *Id.* at ¶ 31. As the victim continued to walk home, the defendant asked the victim if she needed a ride home, continued to follow her, and called her "baby girl" before asking her for a third time if she wanted a ride home, motioning through the window for her to approach the van, and leaving the scene when the victim told him that she saw her mother. *Id.* Moreover, in *Joyce*, defendant's conviction for child abduction was upheld when the court found that a fact finder could infer that the defendant had an unlawful purpose based on

fact that the defendant "was a stranger, he repeated his offer of a ride, he fled the scene quickly, and a month later followed [the victim]…" *Joyce*, 234 Ill.App.3d at 413.

¶ 37    We are not persuaded by defendant's argument that, because he did not repeat his request to get into his truck, and he did not utilize any profane gestures or flirtatious or sexual language, no rational trier of fact could have inferred that he acted with an unlawful purpose. While these types of actions could support a finding that a defendant acted with an unlawful purpose, the absence of such evidence does not, in turn, necessitate a finding that there was insufficient evidence that a defendant acted with an unlawful purpose. Contrary to defendant's claim otherwise, the child abduction statute does not require persistent attempts to take a minor to another location or the use of profanity, or flirtatious or sexual language. Instead, as outlined above, viewing the evidence presented at trial in its entirety, a fact finder could reasonably infer that defendant had an unlawful purpose. Therefore, we affirm defendant's conviction for child abduction.

¶ 38                            **B. Luring of a Minor**

¶ 39    Defendant also argues that he was not proven guilty beyond a reasonable doubt for the offense of luring of a minor. Specifically, defendant argues that the evidence did not establish that he was a stranger to P.D. or her parents, that he intended to "persuade, lure or transport" P.D. away from a known location, and that he acted with an unlawful purpose.

¶ 40    In order to sustain his conviction for luring of a minor, the State was required to prove beyond a reasonable doubt that defendant, who was 21 years of age or older, knowingly contacted or communicated electronically with the minor; (1) knowing that the minor was under 15 years of age; (2) with the intent to "persuade, lure or transport" the minor away from…other location known by the minor's parent or legal guardian to be the place where the minor is located; (3) for an unlawful purpose; (4) without the express consent of the minor's parent or guardian or (5) with the

intent to avoid the express consent of the minor's guardian; and (6) after making such communication, committed an act in furtherance; and (7) is a stranger to the parents or legal guardian of the minor. 720 ILCS 5/10-5.1(a) (West 2008).

¶ 41     Pursuant to this statutory provision, a "stranger" has been defined as "hav[ing] its common and ordinary meaning, including but not limited to, a person that is either not known by the parents of the minor or does not have any association with the parents of the minor." 720 ILCS 5/10-5.1(c)(6) (West 2008).  Defendant argues that he was not a stranger to Christopher Doolan, P.D.'s father, because he had two prior encounters with defendant. In the first encounter, defendant asked Doolan if he could cut his grass and in the second encounter, defendant drove by and asked Doolan if he wanted to "party." Despite these two brief encounters, initiated by defendant, we note that Doolan also testified that they only spoke about cutting grass during the first encounter, he did not know where defendant lived, defendant's age, or any other personal information about defendant. He further testified that defendant had never been to his house for dinner or spoke to him over the telephone. Defendant asks for us to find that any prior encounter, however brief and unremarkable, would require a trial court to find that a person does not meet the statutory definition of a stranger. We reject defendant's argument. We find that a "common and ordinary meaning" of a "stranger" requires us to find that defendant was a "stranger" to P.D.'s parents despite these two brief encounters.

¶ 42     We also find that there was sufficient evidence to establish that he intended to "persuade, lure, or transport" P.D. to a location unknown to her parent or legal guardian. According to defendant, defendant "was headed to Quick Pick, where he intended to and ultimately did use the trash receptacle, saw P.D. walking the same way, and offered her a ride." However, the evidence presented at trial does not support defendant's theory. P.D. testified she was on her way to Quick

Pick to purchase a food item for her mother. Doolan testified that he knew that P.D. left to go to this convenience store. There is no evidence showing that defendant was headed towards this same convenience store prior to seeing P.D. walking along the street or that he knew that P.D. was going to that store at that time. Moreover, there is no evidence showing that defendant intended to use and did use the trash receptacle at this store. While defendant contends that he used the trash receptacle when he was parked outside the store, P.D. testified that while she was inside the store, she saw defendant exit his truck and throw something into the bed of the truck. There was no evidence presented that defendant threw anything into a trash receptacle. Consequently, where there is no evidence to support defendant's contention, we reject his argument that the evidence regarding this element was insufficient to sustain his conviction.

¶ 43    Further, defendant contends that there was insufficient evidence to prove that he acted with an unlawful purpose under the luring of a minor statute. Initially, we recognize that defendant made this same contention relating to his conviction for child abduction. The child abduction statute specifically provides for a permissive presumption that a trier of fact may infer that the luring or attempted luring of a child into a motor vehicle. 720 ILCS 5/10-5(b)(10) (West 2015). On the other hand, the luring of a minor statute does not contain this same permissive presumption relating to the element of unlawful purpose. 720 ILCS 5/10-5.1 (West 2008). Even in the absence of this permissive presumption, we find that any rational trier of fact could have found this essential element of the offense beyond a reasonable doubt. In doing so, we rely upon the same evidence as we previously outlined in considering defendant's argument relating to the offense of child abduction. Clearly, the surrounding circumstances demonstrated that defendant had an unlawful purpose when he intended to "persuade, lure or transport" P.D. away from her trip to the convenience store. Therefore, defendant's conviction for luring of a minor is affirmed.

¶ 44                                 **II. Jury Trial Waiver**

¶ 45        Defendant contends that this case should be remanded for a new trial because he did not

knowingly and voluntarily waive his right to a jury trial. Defendant acknowledges that he failed to

preserve the error because he neither objected before the trial court nor raised the issue in his

posttrial motion. However, he argues that this court may reach this unpreserved error under the

second prong of the plain error doctrine.

¶ 46        The State, in turn, initially responds that defendant forfeited review by failing to object at trial

and raise the issue in his post-trial motion. On the merits, the State asserts that defendant cannot

establish that there was error, under the plain-error doctrine, where the record reflects that

defendant's jury trial waiver was made knowingly and voluntarily. The State emphasizes that

defendant was present when defense counsel advised the trial court that defendant elected to

proceed by way of a bench trial and voiced no objection. Moreover, defendant executed a written

waiver in open court, and in response to court questioning, acknowledged that he wanted to waive

his right to a jury, that he understood that the trial court would be hearing his case and indicated

that he wanted the trial court to hear the case. The State also directs us to defendant's prior juvenile

adjudication showing that defendant had prior experience with the criminal justice system.

¶ 47        The plain error doctrine permits a reviewing court to consider unpreserved errors when "'(1)

the evidence in a criminal case is closely balanced or (2) where the error is so fundamental and of

such magnitude that the accused was denied a right to a fair trial.'" *People v. Harvey*, 211 Ill.2d

368, 387 (2004) (quoting *People v. Byron*, 164 Ill.2d 279, 293 (1995)). "Whether a defendant's

fundamental right to a jury trial has been violated is a matter that may be considered under the

plain error rule." *People v. Bracey*, 213 Ill.2d 265, 270 (2004). The first step in plain error analysis

is to determine whether a plain or obvious error occurred. *People v. Herron*, 215 Ill.2d 167, 187

(2005). "Absent reversible error, there can be no plain error." *People v. Naylor*, 229 Ill.2d 584, 602 (2008). We will review defendant's claim for plain error.

¶ 48    The right to a jury trial is a fundamental right guaranteed by our federal and state constitutions. *People v. Bannister*, 232 Ill.2d 52, 65 (2008). Although the right to a jury trial is fundamental, a defendant remains free to waive that right. *Bracey*, 213 Ill.2d at 269. Any such waiver must be "understandingly" made by the defendant in open court. 725 ILCS 5/103-6 (West 2014). A written waiver as required by section 115-1 of the Code of Criminal Procedure of 1963 (Code) (*id*. §115-1), is one means of establishing a defendant's intent, although not dispositive of a valid waiver. *Id.* at 269-70.

¶ 49    Generally, a jury waiver is valid if it is made by defense counsel in open court in the defendant's presence, without objection by the defendant. *Id*. at 270. ("Recognizing that the accused typically speaks and acts through his attorney, we have given effect to the jury waivers made by defense counsel in defendant's presence where defendant gave no indication of any objection to the court hearing the case.") "For a waiver to be effective, the court need not impart to defendant any set admonition or advice." *Id.* (citing *People v. Smith*, 106 Ill.2d 327, 334 (1985)). Therefore, "the effectiveness of a defendant's waiver depends on the facts and circumstances of each particular case" and turns on "whether the waiving defendant understood that his case would be decided by a judge and not a jury." See *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7 (citing *Bannister*, 232 Ill.2d at 69). A reviewing court can consider a defendant's silence when his attorney "requests a bench trial" as well as his "prior interactions with the justice system in determining whether a jury waiver was made knowingly." *Id.* Because the facts here are not in dispute, we determine *de novo* whether defendant's jury waiver was valid. See *Bannister*, 232 Ill.2d at 66. The

defendant bears the burden of establishing that the jury waiver was invalid. *People v. Reed*, 2016 IL App (1st) 140468, ¶ 7.

¶ 50       On the facts of this case, we agree with the State that the record shows that he knowingly and understandingly waived his right to a jury trial. During a pre-trial status hearing held three weeks before his bench trial commenced, the following exchange occurred with defendant present at the bench with his attorney:

> THE COURT:  You are Kyle Wunderlich, correct?
>
> [DEFENDANT]: Yes, your Honor.
>
> [ASSISTANT STATE'S ATTORNEY]: I believe on the last court date you granted our motion for proof of other crimes.
>
> [DEFENSE COUNSEL]:  That's correct.
>
> [ASSISTANT STATE'S ATTORNEY]:  And I believe we are in the posture of setting these cases for trial.
>
> [DEFENSE COUNSEL]:  That's correct.
>
> [ASSISTANT STATE'S ATTORNEY]:  He has one elected case.
>
> THE COURT:  Which is the elected?
>
> [ASSISTANT STATE'S ATTORNEY]:  I am looking.
>
> THE COURT:  The elected is the 18 CR 02576.
>
> [ASSISTANT STATE'S ATTORNEY]:  2476.
>
> THE COURT:  That's the child luring.
>
> [ASSISTANT STATE'S ATTORNEY]:  Yes, judge. That's correct
>
> [DEFENSE COUNSEL]:  He is requesting a bench trial.

¶ 51    Defendant did not object to counsel's representation or ask any questions regarding what was said. The trial court then set the case "with for bench" in defendant's presence.

¶ 52    On the day that the case was set for trial, the following colloquy occurred:

> THE COURT: Mr. Wunderlich, I'm going to show you a document entitled "jury waiver," ask if that's your signature on there. And is it your desire to waive your right to a jury trial today?
>
> [DEFENDANT]: Yes, your Honor.
>
> THE COURT: You want me to hear the case, is that correct?
>
> [DEFENDANT]: Yes, sir.
>
> THE COURT: Okay, jury waiver is accepted and made part of the record.
>
> ***
>
> THE COURT: All right. We've already done the jury waiver, correct.
>
> [DEFENSE COUNSEL]: Yes, your Honor.
>
> THE COURT: All right. And that was made part of the record.
>
> Just to refresh, Mr. Wunderlich, this is a jury waiver. You already did this. You don't want a jury trial?
>
> [DEFENDANT]: No, sir. No, your Honor.
>
> THE COURT: Either side - - Well, there will be a mutual motion to exclude.

¶ 53    Based on our review of the record and relevant case law, we must reject defendant's argument that his jury trial waiver was not entered into knowingly and voluntarily. Initially, we note that defendant signed and submitted a written jury trial waiver in open court. Although a written jury waiver is not dispositive, the presence of a "'signed jury waiver…lessens the probability that the

waiver was not made knowingly.'" *People v. Rincon*, 387 Ill.App.3d 708, 720 (2nd Dist. 2008) (quoting *People v. Steiger*, 208 Ill.App.3d 979, 982 (2nd Dist. 1991). Moreover, defendant was present during the pre-trial status hearing where the issue of a bench trial was discussed in open court. At that time, defense counsel represented to the trial court that defendant would be proceeding with a bench trial. As explained above, courts have repeatedly upheld the validity of jury waivers where, as here, a defense attorney, in his or her client's presence, advises the court that the defendant has elected to forgo his right to a jury trial in favor of a bench trial, and where the defendant makes no objection to those statements in open court. See, *e.g.*, *People v. Frey*, 103 Ill.2d 327, 330 (1984); *Rincon*, 387 Ill.App.3d at 720-21. Moreover, we note that in this case, rather than raising any objection to defense counsel's statements, defendant, in response to inquires from the court, actually expressed his desire to waive his right to a jury trial and his desire for the trial court to hear his case. During a later colloquy, the trial court displayed the written jury waiver form and again asked defendant if he did not want a jury trial, to which defendant responded, "No, sir. No, your Honor." In addition, defendant's criminal history supports our finding that he knowingly waived the right to a jury trial. See *People v. Thomas*, 2019 IL App (2d) 160767, ¶ 19 ("Further, defendant's criminal history bolsters the determination that he understood his rights, based on his experience with the criminal justice system.").

¶ 54     We agree with the State that the facts in this case are similar to those in *People v. Maxey*, 2018 IL App (1st) 130698-B. In *Maxey*, this court found that the record showed that defendant knowingly and understandingly waived his right to a jury trial where the defendant executed a written waiver in open court, the trial court then confirmed that it was the defendant's signature on the written waiver, the trial court admonished the defendant that he was giving up his right to have a trial by jury, asked him if he knew what a jury trial was, the defendant responded in the

affirmative to these inquires, and defense counsel indicated, in defendant's presence, that the case would be a bench trial. *Maxey*, 2018 IL App (1st) 130698-B, ¶¶ 108-110. Moreover, the defendant in *Maxey*, like defendant in the instant case, had previous experience with the criminal justice system. *Id.* at ¶ 110. Here, we find that the facts also establish that defendant knowingly and understandingly waived his right to a jury trial.

¶ 55    In so finding, we are unpersuaded by defendant's reliance on *People v. Tooles*, 177 Ill.2d 462 (1997), and *People v. Sebag*, 110 Ill.App.3d 821 (2nd Dist. 1982). In *Tooles*, the supreme court explained that the "sole question presented" was whether a defendant's conviction should be reversed and remanded for a new trial where the trial court did not obtain a written jury waiver form in violation of section 115-1 of the Code. *Tooles*, 177 Ill.2d at 464. The court held that a trial court's failure to comply with the written waiver requirement in section 115-1 "does not result in reversal so long as the defendant's waiver was made understandingly in accordance with section 103-6 of the Code…" *Id.* at 468. While the court discussed the colloquies between the trial courts and the respective defendants, the court did not mandate that a trial court must give certain admonishments for a jury waiver to be valid, and it specifically stated, "while the circuit court must ensure that a defendant's jury waiver is understandingly made, no set admonitions or advice is required before an effective waiver of that right may be made." *Id.* at 469. We also recognize that in *Tooles*, the jury waiver was merely oral, not written.

¶ 56    Moreover, in *Sebag*, a *pro se* defendant, responded "Judge" after being informed by the court that he was "entitled to have [his] case tried before a jury or a judge." *Sebag*, 110 Ill.App.3d at 828-29. Although a signed jury waiver appeared in the record, the appellate court reversed the defendant's conviction for public indecency, finding that the record did not reflect a knowing waiver of his right to a jury trial. In doing so, the court explained: "The defendant was without

benefit of counsel, and it does not appear that he was advised of the meaning of a trial by jury nor does it appear that he was familiar with criminal proceedings." *Id.* at 829. Here, unlike in *Sebag*, defendant was represented by counsel throughout all the lower court proceedings and was present on the prior proceeding in which the reference to the bench trial was made by his attorney.

¶ 57     The validity of a jury trial waiver is dependent upon the unique circumstances of each case (*In re R.A.B.*, 197 Ill.2d 359, 364 (2001), and we conclude that based upon the record in this case, defendant's waiver was made knowingly and voluntarily.

¶ 58                                    **III. Other Crimes Evidence**

¶ 59     Defendant maintains that the trial court abused its discretion in admitting the testimony of Serena Anglim regarding a child abduction that occurred 15 days before the charged offense. According to defendant, this evidence was more prejudicial than probative because it lacked factual similarity to the charged offense. The State, in turn, maintains that the trial court exercised appropriate discretion when this evidence was admissible under common law principles as well as pursuant to section 5/115-7.3 of the Code of Criminal Procedure (725 ILCS 5/115-7.3 (West 2006)) (Code).

¶ 60     Here, the State sought to offer Serena Anglim's testimony under common law principles to show defendant's "intent, motive, lack of consent…" Under common law, "other crimes" evidence generally is inadmissible if offered only to demonstrate the defendant's propensity to commit the charged crime. *People v. Donoho*, 204 Ill.2d 159, 169 (2003). Rather, evidence regarding other crimes generally is admissible if offered to prove intent, *modus operandi*, identity, motive, absence of mistake, or any relevant fact other than propensity. *Donoho*, 204 Ill.2d at 170. Such evidence is not considered irrelevant, rather, it is objectionable because such evidence has "too much" probative value. *Id.* When offered to prove intent, a generality similarity between the offenses will

suffice. *People v. Jaynes*, 2014 IL App (5th) 120048, ¶ 56. Its admission is a matter within the discretion of the trial court and will be reversed only absent a clear abuse of discretion. *People v. Ward*, 2011 IL 108690, ¶ 21. A trial court abuses its discretion if its determination is unreasonable, arbitrary, or fanciful, or if no reasonable person would adopt the court's view. *Ward*, 2011 IL 108690, ¶ 21.

¶ 61    The State also sought to admit the other crimes evidence regarding his "propensity to commit child abduction" pursuant to section 115-7.3 of the Code. See 725 ILCS 5/115-7.3 (West 2016). Specifically, the State sought to introduce the testimony of Serena Anglim regarding defendant's commission of a prior child abduction involving her six-year-old daughter, M.S. Section 5/115-7.3 provides an exception to the general rule in criminal cases when, as here, a defendant is accused of child abduction or certain other specified sex crimes, allowing admission for any purpose, including propensity. *People v. Bedoya*, 2021 IL App (2d) 191127, ¶ 93 (citing *People v. Donoho*, 204 Ill.2d at 170).

¶ 62    Under this statute, if a defendant is charged with an enumerated offense, "evidence of the defendant's commission of another offense or offenses set forth in [the statute] may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7-3(b). The legislature enacted section 115-7.3 so that courts could admit other crimes evidence "to show defendant's propensity to commit sex offenses if the requirements" are met. *Donoho*, 204 Ill.2d at 176. However, section 115-7.3 specifically permits evidence of a defendant's prior sexual activity with a child complainant to be admitted for any relevant purpose. 725 ILCS 5/115-7.3(b) (West 2016); *People v. Ward*, 2011 IL 108690, ¶ 25.

¶ 63        Section 115-7.3 further provides that, in weighing its probative value against prejudicial effect, a court may consider: "(1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(c) (West 2016). Trial courts should "be cautious in considering the admissibility of other-crimes evidence to show propensity by engaging in a meaningful assessment of the probative value versus the prejudicial impact of the evidence." *Donoho*, 204 Ill.2d at 186. "When weighing the prejudicial effect of admission, a court should consider whether the other-crimes evidence will become the focus of the trial, or whether it might otherwise be misleading or confusing to the jury." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 47. We recognize that courts have found that, "in general, the danger of unfair prejudice in the context of a section 115-7.3 case, as opposed to a common-law other-crimes case, is greatly diminished by the very fact that section 115-7.3 upended the long-standing rule that other-crimes evidence to establish propensity is *per se* unfairly prejudicial – instead, introduction for propensity is actually proper." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 49 (citing *People v. Walston*, 386 Ill.App.3d 598, 619-20 (2nd Dist. 2008).

¶ 64        We conclude that the trial court did not err in admitting the other-crimes evidence. The record supports the trial court's determination. First, as defendant concedes, there was temporal proximity between the two offenses when only 15 days passed between the two offenses. Although "there is no bright-line rule regarding when a defendant's other crimes are *per se* too remote[,]" these two incidents were sufficiently close in time to be relevant and probative considering the passage of only 15 days. *People v. Stevens*, 2013 IL App (1st) 111075, ¶ 44 (citing *Donoho*, 204 Ill.2d at 183).

¶ 65        Second, the factual similarities between the two offenses support the admission of the other-crimes evidence. Both incidents occurred in the same neighborhood, at the same time of day, and

the manner of execution was nearly identical. In both instances, defendant approached a young female who was alone, beeped his truck horn at them to get their attention, stopped his truck in close proximity to them, tried to get them to enter his truck, and drove away when they sought the assistance of an adult. While defendant argues that there was a sufficient dissimilarity because he used a hand gesture in one instance and yelled in the other instance, we note that the "existence of some differences" between a charged offense and other-crimes evidence does not defeat the admissibility of the other-crimes evidence, because no two crimes are identical. *Donoho*, 204 Ill.2d at 185. More critical to the examination of the evidence in this case is the existence of the significant similarities listed above. Certainly, the existence of these similarities establishes the "general similarity" necessary for the admission of this evidence.

¶ 66        Defendant primarily relies upon *People v. Johnson*, 406 Ill.App.3d 805, 811 (1st Dist. 2010), in which this court ruled that it amounted to error, although harmless, to admit "other crimes" evidence in that case given the significant dissimilarities between the two assaults combined with the trial court's failure to conduct any sort of "meaningful" analysis of the prejudicial effect of the other-crimes evidence. *Johnson*, 406 Ill.App.3d at 812. Defendant suggests that the court in *Johnson* found dissimilarities existed where the sexual assaults involved two different victims, one assault involved entirely different circumstances, and the victims were assaulted on different parts of the body. However, a closer reading of *Johnson* shows that the court actually found there were dissimilarities between the number of perpetrators involved, and not the number of victims. *Id*. at 811. Moreover, this case not only lacks some of the dissimilarities found in *Johnson*, but the similarities are much stronger. See *People v. Nelson*, 2013 IL App (1st) 102619, ¶ 44 (distinguishing *Johnson* on the basis that the two offenses occurred within a three-week time span, the ages of the victims were closer, the assaults occurred on the south side of Chicago, and during

the early morning hours). We also recognize that *Johnson* involved a jury trial, whereas defendant was tried before a bench trial and "the same possibility of prejudice inherent in a jury trial" is not present in a bench trial "since it is presumed that the court considers only admissible evidence in a bench trial." *People v. Dugan*, 260 Ill.App.3d 176, 192 (2nd Dist. 1994) (held in the context of considering the admissibility of other crimes evidence). Consequently, we find *Johnson* to be factually distinguishable.

¶ 67     We also reject defendant's argument that section 115-7.3(b) required a showing that the prior incident involving M.S. amounted to child abduction was not proven beyond a reasonable doubt. Citing to *People v. Wenger*, 258 Ill.App.3d 561 (1st Dist. 1994), defendant argues that this court found that "waving is not enough to show an attempt to luring for purposes of child abduction." Initially, we note that defendant's is asking this court to employ a proof beyond a reasonable doubt standard to the admission of other-crimes evidence. However, "[t]he State's proof of the other crime need not be beyond a reasonable doubt 'but must be more than a mere suspicion.'" *People v. Rosado*, 2017 IL App (1st) 143741, ¶ 22 (quoting *People v. Davis*, 248 Ill.App.3d 886, 893 (4th Dist. 1993)).

¶ 68     Recognizing the appropriate standard, we find that the evidence proved that defendant committed the offense of child abduction in the other offense involving M.S. Unlike in *Wenger* where the defendant parked and waved at the victim, here, we have defendant's act of beeping his car horn to attract the attention of the victim on two separate occasions, and then pulling his vehicle to within two feet of the victim and gesturing to the victim that she should come towards him while he was seated inside his vehicle. Serena Anglim described the hand gesture as a "come here" gesture with his index finger. This action, in conjunction with his act of beeping his car horn to

attract M.S.'s attention, met the requirements of establishing by "more than a mere suspicion" that he was intending to lure the victim into his vehicle for the offense of child abduction.

¶ 69    Defendant further contends that the trial court erred when it failed to properly balance the probative value of this evidence against its prejudicial effect. When the trial court granted the State's motion, it did not specifically mention the applicable balancing test. While "the trial court should have specifically made that supportive statement [,]" other courts have found that this type of error could be harmless error. *People v. Reber*, 2019 IL App (5th) 150439, ¶ 85 (citing *People v. Johnson*, 406 Ill.App.3d 805, 812 (1st Dist. 2010). We find that the trial court's failure to state that it had conducted the requisite balancing test amounted to harmless error based upon the overwhelming evidence presented in this case. "Furthermore, a trial judge is presumed to know that law, and on review, the appellate court presumes that the trial judge followed applicable law unless the record indicates otherwise." *Reber*, 2019 IL App (5th) 150439, ¶ 85 (citing *People v. Groel*, 2012 IL App (3d) 090595, ¶ 43. Here, the record shows that both parties presented their arguments in written motions as well as during oral arguments before the trial court and specifically pointed out the applicable balancing test. Based upon this record, we find that the trial court's omission of the balancing test in its stated ruling was harmless error.

¶ 70    Given the record in this case, we conclude the trial court's ruling was not unreasonable, arbitrary, or fanciful, and a reasonable person could adopt the trial court's view. Accordingly, we conclude the trial court exercised appropriate discretion in admitting the other-crimes evidence of the assault on M.S.

¶ 71                                    CONCLUSION

¶ 72    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 73    Affirmed.