| NOTICE |
| --- |
| This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1). |

2024 IL App (4th) 230508-U

NO. 4-23-0508

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
| --- | --- | --- |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| KENNETH DWAYNE DANDRIDGE, | ) | No. 21CF1283 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court. Justices Harris and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the evidence was sufficient for a jury to reasonably conclude defendant was guilty beyond a reasonable doubt of attempted criminal sexual assault.

¶ 2    Defendant, Kenneth Dwayne Dandridge, was convicted by a jury of attempted criminal sexual assault (720 ILCS 5/8-4, 11-1.20(a)(1) (West 2020)) and aggravated criminal sexual abuse (*id.* § 11-1.60(a)(3)). On appeal, defendant argues his conviction for attempted criminal sexual assault should be reversed because the State failed to prove he specifically intended to sexually assault the victim, D.B. We affirm.

¶ 3                                         I. BACKGROUND

¶ 4    On August 4, 2021, defendant was charged by indictment with (1) attempted criminal sexual assault for taking a substantial step toward committing criminal sexual assault through the use of force when he grabbed D.B.'s breast and struggled with her, (2) aggravated

criminal sexual abuse for the same alleged conduct but based on the purpose of sexual gratification and that D.B. (born in 1960) was 60 years of age or older, and (3) aggravated battery (*id.* § 12-3.05(d)(1)) for the same conduct but based on the contact as being insulting and provoking and D.B. being 60 years of age or older. Prior to trial, the State moved to dismiss the aggravated battery charge, which the trial court granted. The matter proceeded to a jury trial on March 28, 2023.

¶ 5        At trial, D.B. testified that on July 9, 2021, she was 60 years old. She drove to the Eighth Ward Pub to meet a friend, Patricia Greve, so they could both watch a mutual friend perform music. D.B. stated she arrived at the bar just before 7 p.m. and left shortly after 11 p.m. She recalled having three or four beers and only spoke with Greve and the bartender while there. Upon leaving the bar, D.B. recalled seeing someone standing in the tree line near the back of the parking lot. She did not recall seeing this person at any previous time while she was at the bar or recognize who the person was. She then drove to her home. When she arrived home, she opened the garage door to her detached garage and drove her car into the garage. She had her car door open while she gathered her things and when she was about to exit her vehicle, observed defendant. D.B. recalled instantly screaming. Defendant grabbed her breast and she said they "were fighting constantly and [defendant] ended up pinning [her] arm to the door [frame]." While her arm was pinned to the car door frame, she began hitting defendant with the water bottle in her hand and kicking him with her right foot. Defendant stepped on her foot and put his knee into her thigh. She recalled defendant trying to get his hands under her shirt, which left red marks on her stomach and side. Her bra was lifted over her breast. She managed to free her foot from under defendant's foot and kicked defendant in the groin. Defendant opened the water bottle and emptied it onto D.B. At some point during the scuffle, D.B. dropped her purse and

phone and the garage door began to close. When the garage door started closing, defendant fled from the garage. Defendant did not take the purse or phone. When he was leaving, the garage door caught "[defendant's] lower back and he pushed it up, broke it and he got out and ran." D.B. stated defendant never tried to take her car keys, purse, phone, or any of her property in her garage. After defendant left, she called 911 and kept her foot on the garage door to prevent it from opening in case defendant returned. The 911 call made by D.B. was admitted into evidence wherein she stated she had just been attacked by someone who was trying to "rape [her]."

¶ 6 A previously admitted security video with audio from D.B.'s neighbor's home was published to the jury. The video does not show D.B.'s home. In the video, headlights from a car turning into D.B.'s home can be seen as her home appears to be to the rear of the camera's direction. Another vehicle drives past D.B.'s home and continues to the street corner where it stops. The driver, defendant, gets out of the vehicle and can be seen walking across the street and through the neighbor's yard directly in front of the camera. Just before exiting the view of the camera, defendant stops and appears to stoop down and look toward D.B.'s garage before proceeding. After defendant proceeds out of view of the camera, D.B. can be heard screaming for 22 seconds. Amidst her screaming, she can be heard yelling "get the f*** off me!" After she stops screaming, defendant is seen running back to his parked vehicle on the street and driving off.

¶ 7 D.B. stated she learned the video had been disseminated on social media. Thereafter, someone sent her a Facebook profile picture of an individual. D.B. identified the profile picture as belonging to defendant. The profile picture was admitted into evidence and showed a black male with a shaved head, facial hair, and rectangular framed glasses who strongly resembled the individual seen on the security camera video. The picture is dated April

23, 2018, and has defendant's name on it. D.B. stated she had never seen or met defendant prior to that evening. She denied using drugs or attempting to purchase drugs from defendant that evening.

¶ 8        On cross-examination, D.B. stated that, while she was being attacked, she was seated in her car the entire time. She denied telling police officer Drew Somers that she was standing next to her car when she was attacked, but then said she did not recall telling Somers that information. D.B. recalled telling Somers that her pants were wet because she urinated on them but stated she later corrected herself to say her pants were wet because defendant had poured the water bottle on her.

¶ 9        Greve's testimony corroborated much of D.B.'s testimony. Greve also observed an individual near a tree-lined area at the back of the parking lot of the bar where Greve's vehicle was parked. She described the individual as a "bald," "light-skinned black man."

¶ 10        Somers testified to arriving at D.B.'s home after she had called 911. He observed her to be "very shaken up" and "crying hysterically." Somers stated D.B. admitted she had "peed her pants during the incident." Somers also noted the garage door was broken. On cross-examination, Somers stated D.B. had told him she was attacked while standing next to her vehicle.

¶ 11        Detective Rebecca Anderson of the Rockford Police Department interviewed defendant with Detective Toepfer Campbell. The interview was audio and video recorded, admitted into evidence, and published to the jury. In the interview, defendant stated he had learned the security video was on Facebook and volunteered to go to the police station to give his side of the story. Defendant stated he was at the Eighth Ward Pub on July 9, 2021, because he was barhopping that evening celebrating his birthday. He told police D.B. had wanted to

purchase drugs from him, but she did not have any cash with her. Defendant and D.B. arranged for her to purchase drugs in the parking lot of the bar. D.B. told him to follow her to her home and not to park in the driveway. When he approached her garage and handed her the drugs, she grabbed his shirt sleeve and began screaming. He freed himself from her and fled.

¶ 12        The State rested. Defendant moved for a directed verdict, which the trial court denied.

¶ 13        The jury found defendant guilty of both charges.

¶ 14        Defendant filed a motion for a new trial, which the trial court denied. The court merged his aggravated-criminal-sexual-abuse conviction into the attempted-criminal-sexual-assault conviction. The court sentenced defendant to 14 years' imprisonment for attempted criminal sexual assault. Defendant filed a motion to reconsider sentence, which the court denied.

¶ 15        This appeal followed.

¶ 16                            II. ANALYSIS

¶ 17        On appeal, defendant argues his conviction for attempted criminal sexual assault should be reversed because the State failed to prove he specifically intended to sexually assault D.B.

¶ 18        When examining the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess the witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence

unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 19 A person commits criminal sexual assault when he commits an act of sexual penetration upon a victim by the use of force or threat of force. 720 ILCS 5/11-1.20(a)(1) (West 2020). Here, defendant was charged with attempted criminal sexual assault, which required the State to prove that (1) defendant performed an act which constituted a substantial step toward the commission of the offense of criminal sexual assault and (2) he did so with the intent to commit the offense of criminal sexual assault. *Id.* § 8-4.

¶ 20 Defendant's contention on appeal draws a distinction between sexual penetration and sexual conduct. "Sexual penetration" is defined as "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person." *Id.* § 11-0.1. "Sexual conduct" is defined as "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused." *Id.* Noting these definitions, defendant argues the State has only shown defendant's conduct was sufficient to support a conviction for criminal sexual abuse (*id.* § 11-1.50), which requires "sexual conduct" as an element. Defendant contends the State did not prove he intended to commit an act of sexual penetration because the evidence showed he only touched D.B.'s breast but made no overt movements to remove either his or D.B.'s pants, made no contact with D.B.'s sex organs, and made no contact between his mouth or sex organ and D.B.'s sex organ. Additionally, he claims, there is no evidence showing defendant uttered any words suggesting he intended to commit an act of sexual penetration. In support, defendant cites *People v. Pitts*, 89 Ill. App. 3d 145 (1980).

- 6 -

¶ 21       In *Pitts*, the defendant was charged with attempted rape. *Id.* at 146. The issue was whether the defendant intended to have sexual intercourse with the victim. *Id.* at 147. The defendant grabbed the victim and prevented her from leaving. *Id.* at 146. He knocked her to the floor and began hitting her while she screamed. *Id.* The defendant threatened to kill her and felt the victim's breasts. *Id.* The victim testified she "did not get the impression" the defendant was attempting to remove her pants. *Id.* Eventually, the defendant told the victim to stay in a prone position as he laid on top of her and "moved his body up and down until he experienced an orgasm." *Id.* The *Pitts* court reversed the defendant's conviction for attempted rape because the defendant never disrobed or exposed his genitals and sought sexual gratification, not by sexual intercourse, but by rubbing his fully clothed genitals against the victim's fully clothed body. *Id.* at 147-48.

¶ 22       We find *Pitts* distinguishable from this matter. In *Pitts*, the victim's own testimony suggested the defendant's intent was not to perform an act of sexual penetration. Indeed, after struggling with the victim, the defendant's conduct showed he had accomplished his objective—regardless of what his original intent might have been—when he attained sexual gratification without sexual penetration.

¶ 23       In the case *sub judice*, the 911 call from D.B. showed she was absolutely under the impression defendant had intended to commit an act of sexual penetration. Defendant, in this case, did not complete any act of sexual penetration or gratification because he fled when the garage door began to close; however, "[t]he crime of attempt is complete upon the completion of a substantial step (with the requisite intent), and subsequent abandonment of the criminal purpose is no defense." *People v. Hawkins*, 311 Ill. App. 3d 418, 424 (2000) (citing *People v. Myers*, 85 Ill. 2d 281, 290 (1981)). Furthermore, this court, in *Hawkins*, found *Pitts* to be

obsolete because it was "decided prior to the enactment of our current sexual assault statutes, and at a time when testimony of victims of sexual assault had to be either 'clear and convincing or substantially corroborated,' for the charge to be deemed proved beyond a reasonable doubt and the conviction sustained." *Id.* at 429-30 (citing *People v. Schott*, 145 Ill. 2d 188, 202 (1991)).

¶ 24        While *Pitts* does not support defendant's contention on appeal, we must still assess whether his arguments merit reversing his conviction for insufficient evidence. A person commits attempt when he, with intent to commit an offense, takes any act that is a substantial step toward committing the offense. 720 ILCS 5/8-4(a) (West 2020). Whether a person has taken a substantial step is dependent on the facts and circumstances of each particular case. *People v. Bell*, 2020 IL App (4th) 170804, ¶ 92. Therefore, a reviewing court must carefully evaluate the facts of each individual case. *Id.*

¶ 25        To sustain a conviction for attempt, a defendant need not have finished "the last proximate act" for the commission of the offense. *People v. Sweigart*, 2013 IL App (2d) 110885, ¶ 20. As we noted above, abandonment of criminal purpose after the commission of a substantial step is not a defense. However, simple preparation is not sufficient to support an attempt conviction. *Id.* When evaluating whether a defendant's actions constitute the requisite substantial step for attempt, courts often refer to the Model Penal Code. See *Bell*, 2020 IL App (4th) 170804, ¶ 99. Section 5.01 of the Model Penal Code (Model Penal Code § 5.01(2) (1985)) describes actions that should not be found insufficient to sustain a substantial step finding if the action corroborates the offender's criminal purpose. *Id.* In this case, the Model Penal Code provides two relevant factors as strongly corroborative of a defendant's conduct: "lying in wait, searching for or following the contemplated victim of the crime" and "unlawful entry of a

structure, vehicle or enclosure in which it is contemplated the crime will be committed." *Id.* § 5.01(2)(a), (d).

¶ 26　　　　In this case, there was sufficient evidence that defendant took a substantial step toward committing criminal sexual assault with the requisite intent to commit the offense. The evidence showed defendant was at the bar at the same time as D.B. Indeed, the record reflects that D.B. and Greve both appeared to spot defendant in the tree line of the parking lot before they both left for their respective homes. From there, defendant followed D.B. to her home. This evidence supports the inference defendant was lying in wait before following his contemplated victim of criminal sexual assault, D.B., to her home. After parking his vehicle on the street past her home, defendant walked through the neighbor's yard before stopping and observing that D.B. was in her garage. Defendant then proceeded to attack D.B. in her garage. This supports defendant's conduct of making unlawful entry into D.B.'s garage where he intended to commit the offense. D.B. can be heard screaming and yelling for defendant to get off of her. According to D.B., defendant pinned her arm against the door frame of her vehicle and used his knee to press against her thigh while he attempted to get his hand under her shirt. D.B. resisted and fought back, but her resistance did not stop defendant, as it was not until the garage door incidentally began closing when he abandoned his efforts and fled.

¶ 27　　　　"Because evidence of intent is usually not direct, it may be proved circumstantially by inferences reasonably drawn from the circumstances of the defendant's conduct." *People v. Monigan*, 204 Ill. App. 3d 686, 688 (1990). Here, the inferences from defendant's conduct, drawn in a light most favorable to the State, support that a reasonable jury could conclude defendant intended to commit criminal sexual assault.

¶ 28    Defendant's argument is essentially that, because he had not removed his or D.B.'s pants and there had been no genital contact, he had not taken a substantial step toward committing criminal sexual assault. But defendant's conduct until he fled was already within a "dangerous proximity of success" toward committing the offense. *Hawkins*, 311 Ill. App. 3d at 423-24. Defendant's arguments focus on substantial *further* steps toward committing the offense, but the fact that "further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial." *Id.* at 424; *People v. Perkins*, 408 Ill. App. 3d 752, 758-59 (2011). Therefore, based on the facts of this case, there was sufficient evidence for a jury to reasonably conclude beyond a reasonable doubt that defendant's conduct demonstrated his intent to commit criminal sexual assault and he performed acts constituting a substantial step toward committing said offense.

¶ 29                              III. CONCLUSION

¶ 30    For the reasons stated, we affirm the trial court's judgment.

¶ 31    Affirmed.